867 A.2d 1159

EDWARD T. COYNE AND SANDRA COYNE, HIS WIFE, PLAINTIFFS–APPELLANTS, v. STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION AND VINCENT M. MCDANIEL, DEFENDANTS–RESPONDENTS, AND JOHN DOE 1–10, JANE DOE 1–10 AND JOHN DOE CORP. 1–10, FICTITIOUSLY NAMED, DEFENDANTS.

Argued November 30, 2004—Decided March 2, 2005.

*E. Drew Britcher* argued the cause for appellants (*Britcher, Leone & Roth,* attorneys; *Mr. Britcher* and *Jessica E. Choper,* on the briefs).

*Howard J. McCoach,* Deputy Attorney General, argued the cause for respondents (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Jacqueline A. Augustine,* Deputy Attorney General, on the brief).

*Anne P. McHugh* submitted a brief on behalf of *amicus curiae,* Association of Trial Lawyers of America–New Jersey (*Pellettieri, Rabstein & Altman,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal raises the serial issues whether the discretionary immunity provisions of the Tort Claims Act, *N.J.S.A.* 59:2–3a, bar the underlying negligence claim pressed by plaintiff Edward Coyne against defendants the New Jersey Department of Transportation (DOT) and Vincent McDaniel, one of its employees, and, if not, whether defendants' actions were "palpably unreasonable." *N.J.S.A.* 59:2–3d. We hold that, on the record developed below on defendants' motion for summary judgment, DOT's and McDaniel's actions were not immune. We are unable, however, to determine on that record whether DOT's and McDaniel's actions were "palpably unreasonable." Therefore, we reverse the judgment of the Appellate Division, and remand this case to the trial court.

I.

On December 14, 1998, DOT was conducting a roving cleaning operation on the left-hand side of the northbound lanes of Route 287 in Montville Township, collecting and discarding debris located

along the barrier that divides the northbound and southbound lanes of the highway. DOT did not close the left-hand lane of Route 287 during this operation. Instead, approximately one-half to one mile before the roving cleaning operation, DOT located a truck equipped with a flashing sign that cautioned "Left Lane Closed Ahead." The roving cleaning operation itself consisted of a total of eight vehicles including, in order, a rack truck, an empty dump truck, a front-end mechanical sweeper, another dump truck, and a pick-up truck with strobe lights. Bringing up the rear of this caravan was the dump truck driven by McDaniel, which was equipped with an impact attenuator and flashing directional arrowboard and which was, itself, followed by yet another dump truck some 500 feet behind. The clean-up crew walked in front of this caravan, removed the debris from the shoulder of the road leading to the barrier, and, from time to time, stopped the mechanical sweeper and the dump truck to place the debris in the dump truck. Because of the varying widths of the shoulder along the barrier, on occasion the caravan would encroach on the left lane of the highway, thereby blocking travel in that lane.

Plaintiff Edward Coyne was traveling in his van in the left lane of northbound Route 287 at sixty-five to seventy miles an hour. Plaintiff claims he did not see the DOT truck equipped with a flashing sign that cautioned "Left Lane Closed Ahead" although that truck was traveling within a half-mile to one mile behind the actual shoulder cleaning operation. Plaintiff was "boxed in" by two tractor-trailers, one immediately in front of him and another immediately to his right. Without much warning, the tractor-trailer in front of plaintiff moved into the center lane. Plaintiff then saw the flashing directional arrowboard on the rear of the dump truck driven by McDaniel and realized he could no longer remain in the left lane. He first tried to accelerate to get in front of the tractor-trailer immediately to his right and move into the center lane, much as the tractor-trailer ahead of him had. When he realized he would be unable to do so, plaintiff tried slowing down to move into the center lane once the tractor-trailer immediately to his right passed. Despite that attempt, plaintiff simply

ran out of road and plowed instead into the impact attenuator attached to the rear of the dump truck driven by McDaniel. Plaintiff suffered significant injuries.

Plaintiff and his wife filed suit against DOT, McDaniel and assorted fictitious John Doe persons and entities in order to recover for his injuries. DOT and McDaniel defended the lawsuit on two interrelated bases: that DOT's actions on that date were immune from suit under the discretionary immunity provisions of the Tort Claims Act, *N.J.S.A.* 59:2–3a, and that, in any event, DOT's actions were not "palpably unreasonable." The trial court agreed on both points and entered summary judgment in favor of DOT and McDaniel and against plaintiff.

On appeal, plaintiff argued that, under the circumstances here, DOT was not immune from suit. Conceding that DOT's Safety Manual provided a basis for immunity, plaintiff nonetheless argued that the summary judgment record developed in the trial court was insufficient to justify a finding that DOT's acts on December 14, 1998 were consonant with the requirements of DOT's Safety Manual and, hence, the entry of judgment in favor of defendants was improper.

The majority of the Appellate Division panel agreed with the trial court and held that DOT's actions were entitled to discretionary act immunity. *Coyne v. State,* 366 *N.J.Super.* 578, 841 *A.*2d 962 (App.Div.2004). Because of that holding, the panel did not reach the question whether DOT's and McDaniel's actions were "palpably unreasonable." In dissent, and accepting the majority's legal analysis, Judge Kestin framed the question differently. According to the dissent, "[w]hether or not the road crew acted reasonably in impinging on a lane of travel in order to perform its maintenance functions is manifestly a question of fact that requires more development than summary judgment procedures typically allow." *Id.* at 595, 841 *A.*2d 962. As a result, the dissent concluded that "[t]he terms of *N.J.S.A.* 59:4–2a, generally establishing the parameters of liability, and the well-established idea that even the question of whether conduct was 'palpably unreason-

able' is ordinarily a jury question, should preclude a holding in the present posture of the case that relies solely upon the discretionary act immunity for public entities recognized by the Tort Claims Act." *Id.* at 596, 841 *A.2d* 962 (citation omitted).

As provided in *Rule* 2:2–1(a)(2), plaintiff appealed as of right on the sole issue raised by the dissent in the Appellate Division. Plaintiff also sought certification on four additional issues, which we granted. 180 *N.J.* 452, 852 *A.2d* 189 (2004). We also granted amicus curiae status to the Association of Trial Lawyers of America—New Jersey. We now reverse the judgment of the Appellate Division based on our conclusion that, although DOT's and McDaniel's actions were not immunized by *N.J.S.A.* 59:2–3a, we must remand this case to the trial court for a determination whether those actions were "palpably unreasonable." *Muhammad v. N.J. Transit,* 176 *N.J.* 185, 195, 821 *A.2d* 1148 (2003).[1]

## II.

In *Willis v. Dep't of Cons. & Econ. Dev.,* 55 *N.J.* 534, 264 *A.2d* 34 (1970), sovereign immunity as to tort claims in this State was abrogated. *Willis* did not, however, eliminate the common-law doctrine of sovereign immunity altogether. Rather, the Court "emphasize[d] that the State will not be held liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial cast, nor generally with respect to decisions calling for the exercise of official judgment or discretion." *Id.* at 540, 264 *A.2d* 34. Acknowledging the far-reaching ramifications of its ruling, the Court declined to give retroactive effect to *Willis*

---

[1] At the conclusion of its summary judgment analysis, the trial court additionally held that DOT's and McDaniel's actions were not "palpably unreasonable." In light of its holding that the actions were immune, the Appellate Division did not reach the latter issue. *Coyne v. State, supra,* 366 *N.J.Super.* at 595, 841 *A.2d* 962 ("Accordingly, having agreed with the motion judge that defendants' actions were immunized, it is unnecessary for us to decide whether defendants' actions were palpably unreasonable."). For the reasons advanced below, we remand that issue—whether DOT's and McDaniel's actions were "palpably unreasonable"—to the trial court.

and its prospective effect was deferred until January 1, 1971 so as to allow the Legislature sufficient time to address whether, to what extent, and under what conditions it wished to maintain sovereign immunity for tort claims against the State.

The Legislature's answer was the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, a comprehensive statutory scheme establishing the parameters of such claims, including notice and investigation provisions, as well as the substantive rules pertaining to sovereign immunity for tort actions. See generally *Malloy v. State,* 76 *N.J.* 515, 518–20, 388 *A.*2d 622 (1978) (discussing *Willis* and its Legislative response). The Tort Claims Act itself declares prominently that the public policy of this State is "that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein," *N.J.S.A.* 59:1–2, and we are enjoined that "[a]ll of the provisions of this act should be construed with a view to carry out the above legislative declaration." *Ibid.* Significantly, the Tort Claims Act then instructs that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." *N.J.S.A.* 59:2–1a.

The guiding principle of the Tort Claims Act is that "immunity from tort liability is the general rule and liability is the exception," *Garrison v. Tp. Of Middletown,* 154 *N.J.* 282, 286, 712 *A.*2d 1101 (1998), a principle we have consistently reaffirmed. *Gilhooley v. County of Union,* 164 *N.J.* 533, 538, 753 *A.*2d 1137 (2000) (citing *Collins v. Union County Jail,* 150 *N.J.* 407, 413, 696 *A.*2d 625 (1997)) ("The theme of the [Tort Claims] Act is immunity for public entities with liability as the exception."); *Tice v. Cramer,* 133 *N.J.* 347, 356, 627 *A.*2d 1090 (1993) ("When both liability and immunity appear to exist, the latter trumps the former."). As a corollary to that principle, the Tort Claims Act is clear as to whether liability attaches to the State and its instrumentalities when they perform discretionary activities: "[a] public entity is not liable for an injury resulting from the exercise of judgment or

discretion vested in the entity." *N.J.S.A.* 59:2–3a. It is under that latter concept—immunity for discretionary activities—that both the trial court and the Appellate Division sheltered DOT's acts complained of here.

### III.

#### A.

At the center of this controversy is the interpretation and application of DOT's Safety Manual, which must be examined in the context of a discrete analytical framework:

> To recover under *N.J.S.A.* 59:4–2, the Act's general liability section, a plaintiff must show that the property was in a dangerous condition at the time of the injury; that the injury was proximately caused by the dangerous condition; that the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred; and that a public employee created the dangerous condition or that the public entity had notice in time to protect against the condition itself. Additionally, there can be no recovery unless the action or inaction on the part of the public entity in protecting against the condition was "palpably unreasonable," a term nowhere defined in the Act.
>
> [*Kolitch v. Lindedahl*, 100 *N.J.* 485, 492–93, 497 *A*.2d 183 (1985) (citations omitted).]

However, before one can reach any determination of liability, plaintiff must first vault the threshold issue of whether the DOT's Safety Manual represents "the exercise of judgment or discretion vested in [DOT]" as required by *N.J.S.A.* 59:2–3a. In reaching that threshold issue, our analysis is informed by the statutory caveat that "[n]othing in [*N.J.S.A.* 59:2–3] shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions." *N.J.S.A.* 59:2–3d; *see also Costa v. Josey*, 83 *N.J.* 49, 54–55, 415 *A*.2d 337 (1980) (In interpreting *N.J.S.A.* 59:2–3, "subdivision (a) should be read in conjunction with the areas of protected discretion expressly outlined in subparagraphs (b), (c) and (d).").

> We also have made clear that
>
> the "exercise of ... discretion" in *N.J.S.A.* 59:2–3(a) refers to actual, high-level policymaking decisions involving the balancing of competing considerations. Such decisions have been traditionally entrusted to coordinate branches of government,

and courts, utilizing standard tort principles, are ill-equipped to interfere with them. These discretionary determinations likely include such decisions as "whether to utilize the Department's resources and expend funds for the maintenance of [a] road; whether to repair the road by patching or resurfacing; [and] what roads should be repaired...." Once it is determined that a maintenance program involving resurfacing will be undertaken, however, the government will ordinarily be held to the standard of care set forth in *N.J.S.A.* 59:4-2. Although the exercise of some discretion may still be involved (*e.g.*, the transportation planners may choose one resurfacing plan over another), the immunity rule will protect only basic policy determinations.

[*Costa v. Josey*, 83 *N.J.* 49, 55, 415 *A.*2d 337 (1980) (citation omitted).]

This analysis informs whether the DOT's Safety Manual triggers the application of the discretionary act immunity provisions of *N.J.S.A.* 59:2–3.

### B.

■ The trial court held, and the majority of the Appellate Division panel agreed, that there was no material issue of fact in dispute and, hence, summary judgment was appropriate. With respect to the record necessary to determine whether the discretionary act immunity provisions of *N.J.S.A.* 59:2–3 apply, we also agree. In *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995), we made clear that

a determination whether there exists a genuine issue of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

[*Id.* at 540, 666 *A.*2d 146 (internal quotations and citation omitted).]

The *Brill* summary judgment standard is codified in our Court Rules:

The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

[*R.* 4:46–2(c).]

Our review of a summary judgment order is akin to that of the trial court, that is, "we must view the facts that may be inferred from the pleadings and discovery in the light most favorable to plaintiffs." *Strawn v. Canuso*, 140 *N.J.* 43, 48, 657 *A*.2d 420 (1995).

## C.

Here, DOT relies on a characterization of the convoy of cleaning vehicles and personnel as a "slow moving operation." Based on that characterization, DOT argues that the relevant section of the DOT's Safety Manual provides that

[o]n any slow moving operation such as ... litter patrol, etc., conducted in the active or part of the active lanes of a roadway, where the speed limit exceeds 35 MPH an electric arrowboard shall be towed or mounted to the back-up vehicle. The back-up vehicle will maintain a distance of 75 to 150 ft. from the vehicle or work operation.

[New Jersey Dep't of Transp., *Safety Manual* 16 (1985) (DOT's Safety Manual).]

Thus, according to DOT, the safety precautions it undertook during its cleaning operation on the northbound lanes of Route 287 on December 14, 1998 were not only consistent with the requirements of the DOT's Safety Manual, but exceeded those requirements. According to one of the DOT drivers in the cleaning convoy, the moving messageboard flashing "Left Lane Closed Ahead" that DOT placed one-half to one mile before the roving cleaning operation "wasn't even required [by the DOT's Safety Manual]. We decided to put it out there anyway." DOT's assertions as to the efforts undertaken serve as the predicate for DOT's claim of immunity.

We disagree with DOT's basic premise that behavior consonant with the DOT's Safety Manual automatically immunizes that behavior. The DOT's Safety Manual introduces the safety requirements for roadway operations with these prominent disclaimers:

1. During any work operation where men and equipment are engaged on or near the main pavement or shoulders of the highway, appropriate protective devices shall be provided to protect personnel and the traveling public. NO ONE STANDARD SEQUENCE OF SIGNS OR OTHER TRAFFIC CONTROL DE-

VICES CAN BE SET UP AS AN INFLEXIBLE ARRANGEMENT FOR ALL SITUATIONS DUE TO THE VARIETY OF CONDITIONS ENCOUNTERED. A ROAD CREW'S RESPONSIBILITY SHOULD BE DIRECTED TOWARD THE SAFE AND EXPEDITIOUS MOVEMENT OF TRAFFIC THROUGH A CONSTRUCTION OR MAINTENANCE WORK SITE, AND TO THE SAFETY OF THE WORK FORCE PERFORMING THESE OPERATIONS.

2. IT SHALL BE THE RESPONSIBILITY OF THE PERSON IN CHARGE TO INSTITUTE THE PLACING OF ALL APPROPRIATE CAUTIONARY DEVICES AND CONTROLS AS MAY BE REQUIRED FOR THE PARTICULAR JOB. IT SHOULD BE EMPHASIZED THAT THESE ARE MINIMUM DESIRABLE STANDARDS FOR NORMAL SITUATIONS AND THAT ADDITIONAL PROTECTION SHOULD BE CONSIDERED WHEN COMPLEXITIES AND HAZARDS PREVAIL.

[DOT's Safety Manual, at 9.]

Because the DOT's Safety Manual delegates ultimate authority to the road crew, it cannot, as presently constituted and under these circumstances, trigger the discretionary act immunity provisions of *N.J.S.A.* 59:2-3. To conclude differently trivializes the requirement that "the immunity rule will protect only basic policy determinations." *Costa v. Josey, supra,* 83 *N.J.* at 55, 415 *A.*2d 337. Straightforward logic compels the conclusion that the State cannot, under the guise of engaging in a discretionary act, delegate to a road crew the protections from suit afforded only to policy makers:[2]

That the discretionary function immunity should be limited to actual policymaking is further supported by practical considerations. It is apparent that a literal interpretation of the term "discretion" would effectively exempt from the operation of the Tort Claims Act *all* government action unless it resulted from mere inadvertence. Almost all official conduct, no matter how ministerial, involves the exercise of some judgment and decision-making. To construe [*N.J.S.A.* 59:2-3a] that broadly, however, would in effect eliminate most of the liability which the Legislature clearly intended to permit when it enacted the statute.

[*Costa v. Josey, supra,* 83 *N.J.* at 60, 415 *A.*2d 337.]

---

[2] To this extent, and by virtue of the disclaimers in the DOT's Safety Manual, we must reject the Appellate Division's added conclusion that "because the decision establishing the procedures in the manual was discretionary and immunized, when the DOT employees followed these procedures during the clean-up operation, their actions were also immunized." *Coyne v. State, supra,* 366 *N.J.Super.* at 590, 841 *A.*2d 962.

## IV.

Our determination that DOT's highway cleaning operations on December 14, 1998 are not immune does not bring our inquiry to an end. We must now address whether DOT's actions were "palpably unreasonable." *N.J.S.A.* 59:2–3d. This additional step is required because "there can be no recovery [under the Tort Claims Act] unless the action or inaction on the part of the public entity in protecting against the condition was 'palpably unreasonable,' a term nowhere defined in the Act." *Kolitch v. Lindedahl,* 100 *N.J.* 485, 493, 497 *A.*2d 183 (1985).

"Palpably unreasonable" means more than ordinary negligence, and imposes a steep burden on a plaintiff. "[The term "palpably unreasonable"] implies behavior that is patently unacceptable under any given circumstances" and "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." *Kolitch v. Lindedahl, supra,* 100 *N.J.* at 493, 497 *A.*2d 183. See also *Brown v. Brown,* 86 *N.J.* 565, 575, 432 *A.*2d 493 (1981) ("[E]ven if a plaintiff were to establish [the prerequisites for negligence liability on a public entity], he could not prevail if the action the public entity took or failed to take was not palpably unreasonable. This element, the action or inaction of the public entity, refers to the public entity's discretion in determining what action should or should not have been taken.").

As stated, plaintiff bears the burden of proving that defendant acted in a palpably unreasonable manner. *Muhammad v. N.J. Transit,* 176 *N.J.* 185, 195, 821 *A.*2d 1148 (2003). We cannot determine, on the summary judgment record before us, whether plaintiff's claim that DOT should have done more in the way of safety precautions than what the DOT's Safety Manual required is sufficient to determine that DOT's actions were "palpably unreasonable." In this regard, after extensively reviewing the parties' competing claims concerning whether DOT's and McDaniel's actions were immune, the trial court added that:

I don't find there's (sic) any material facts that have been presented by the plaintiff that would trigger an argument that the conduct was palpably unreasonable.

> But, more importantly, I find, for the record, that the provisions under 59:2–3 here do provide for the immunity of the State of New Jersey in this case. And I will grant the judgment—summary judgment application filed by the defendant.

Because the record lacks specificity on the question, we remand this case to the trial court for its discrete determination on the summary judgment record before it whether DOT's and McDaniel's actions were "palpably unreasonable," that is, whether DOT's and McDaniel's actions "implie[d] behavior that is patently unacceptable under any given circumstances" such that "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." *Kolitch v. Lindedahl, supra,* 100 *N.J.* at 493, 497 *A.*2d 183.

## V.

The judgment of the Appellate Division is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.