**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2074-17T4

LUZ CRUZ,

      Plaintiff-Appellant,

v.

CAMDEN COUNTY,

      Defendant-Respondent,

and

CITY OF CAMDEN,

      Defendant.

_____

Submitted January 29, 2019 – Decided February 19, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1035-16.

Fine and Staud, LLC, attorneys for appellant (Theodore C. Levy, on the brief).

Christopher A. Orlando, Camden County Counsel, attorney for respondent (Matthew White, Assistant County Counsel, on the brief).

PER CURIAM

Plaintiff Luz Cruz appeals from a November 30, 2017 order granting summary judgment to defendant County of Camden, dismissing her claims under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. We affirm.

We derive the facts from the summary judgment record. Shortly before 6:30 p.m. on July 19, 2015, plaintiff and her friend drove a U-Haul truck to an apartment on the 1900 block of River Avenue in Camden to pick up a couch. River Avenue is owned, controlled, and maintained by the County. The truck was parked on the opposite side of the street from the apartment. Neither plaintiff nor her friend saw a pothole while walking across the street to the apartment building.

After obtaining the couch, plaintiff, her friend, and a resident of the apartment carried the couch out of the apartment and began crossing the street with plaintiff at the back end of the couch. They were not crossing the street within a marked crosswalk. Apparently, no one saw the pothole when crossing the roadway with the couch. As they did so, plaintiff tripped and fell on a pothole in the center of the roadway, which she had not seen. About two months

after the accident, plaintiff's expert measured the pothole as approximately eighteen inches in length, six inches in width, and three inches in depth. Plaintiff sustained a fracture of the fifth metatarsal of her left foot and complications during her recovery.

The County maintains over 400 miles of roadway throughout its 228 square miles. River Avenue in Camden makes up approximately 1.7 miles of this network of County roads. It is a busy two-lane concrete urban roadway in an area of mixed residential and commercial buildings.

The County's Department of Public Works (DPW) is staffed by twenty-eight employees. DPW crews are tasked to look for potholes as they carry out their daily assignments and either repair them on the spot or report the issue to superiors for repair by other crews. The County also maintains a dedicated phone line and email address for receiving complaints regarding potholes and other road problems. Persons can report potholes by using that phone line or email address at any time. In addition, reports of road problems are also received from police, fire, and public safety personnel.

The record demonstrates the County did not have actual notice of the pothole. The DPW received a complaint about a dip in the road and a pothole on the 1800 block of River Avenue on May 20, 2015, which was repaired on

3

May 21 and May 28, 2015.  No such complaint was received by the DPW for the pothole in question.  In fact, there were no complaints, reports, or maintenance records relating to any work performed by the DPW, on the 1900 block of River Avenue during the past ten years.

As to constructive notice, plaintiff offered no evidence of how long the pothole existed prior to the accident.  Plaintiff did not observe the pothole when she visited the same address approximately one year prior to her accident.  Neither plaintiff nor her friend observed the pothole when they crossed the roadway on their way to the apartment.  Plaintiff did not offer any evidence of anyone from the surrounding area having knowledge of how long the pothole had existed.  Although plaintiff's expert opined the area in which plaintiff tripped had been patched approximately seven years prior to the accident, he did not determine or estimate when the pothole that caused plaintiff to fall had formed.

Plaintiff's expert did not opine that the failure to patch the pothole violated any established roadway standards, policies, or regulations.  Nor did he conclude that the pothole would cause damage to a vehicle traveling over it.

A-2074-17T4

In March 2016, plaintiff filed a complaint against the County and the City of Camden.[1]  Plaintiff claims her fall and the resulting injuries were caused solely by the County's negligent failure to properly maintain the road in a good state of repair.  The County denied plaintiff's allegations and asserted her claims were barred by the TCA.

Following the completion of discovery, the County moved for summary judgment.  Plaintiff opposed the motion.  The trial court heard oral argument and issued a subsequent order and oral decision granting summary judgment dismissing plaintiff's claims against the County.  This appeal followed.

In his decision, the motion judge noted neither plaintiff, her friend, nor the apartment resident who helped carry the couch saw the pothole.  He also noted plaintiff was carrying the back end of the couch, which "evidently" blocked her view of the pothole.  The judge found the record disclosed the County had no knowledge or notice of the pothole.  The judge then engaged in the following analysis:

> Public entities do not have the ability or resources to remove all potential dangers to pedestrians in these situations.  Roadways cannot be made or maintained completely risk-free for pedestrians.  Under [the TCA], a dangerous condition means a condition of property that creates a substantial risk of injury when such

---

[1]  Plaintiff voluntarily dismissed her claims against the City of Camden.

A-2074-17T4

property is used with due care in a manner in which it is reasonably foreseeable that it will be used . . . .

The generally intended use of River [Avenue] at that location is for vehicle use. A pedestrian has a right to cross the street. One might wonder why the U-Haul van was parked across the street or why the plaintiff did not see the [pothole] that she says caused her to fall. The evidence in the form of the photographs requires a certain leap of faith on the [c]ourt's part.

The judge noted that even if the pothole was considered a dangerous condition, plaintiff's expert did not establish any timeframe for the pothole and did not provide any standard for what the County should have done. The judge concluded a review of the evidence in a light most favorable to plaintiff revealed "a failure of proof." He noted the three-inch deep pothole, "located in the middle of the vehicle-traveled portion" of the roadway, "apparently was not causing any trouble for vehicles and certainly, there were no complaints that the record reflects." The judge found plaintiff could not show the "pothole was of such an obvious nature that the public entity, in exercise of due care, should have discovered the condition and its dangerous character." The judge considered the expert's report a net opinion because it did not provide a standard for what the County should have done and does not "describe when or how." Finally, the judge determined the County's conduct was not palpably unreasonable.

6

Plaintiff argues the trial court erred in granting summary judgment because: (1) the County had actual and constructive notice of the pothole and failed to make proper repairs; (2) the County's failure to maintain a major County road was palpably unreasonable; and (3) plaintiff's injuries met the TCA's threshold of permanency and substantial impairment of bodily function to recover damages for pain and suffering.

Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"We review appeals from determinations of summary judgment by employing the same standards governing the trial court." Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)). "Because the dispute here involves the application of the TCA to the facts of this case, we review the determination de novo. That is, we give 'deference to the supported factual findings of the trial court, but' not to its

'application of legal principles to such factual findings.'" Id. at 126-27 (quoting State v. Nantambu, 221 N.J. 390, 404 (2015)).

Public entity liability is restricted under the TCA. Polzo v. Cty. of Essex, 209 N.J. 51, 55 (2012) (Polzo II). Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2012) (citing Collins v. Union Cty. Jail, 150 N.J. 407, 413 (1997)); see N.J.S.A. 59:1-2 and 59:2-1. Accordingly, "immunity for public entities is the general rule and liability is the exception." Kemp v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as "the 'guiding principle'" of the TCA (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005))).

N.J.S.A. 59:4-2 "creates public liability for dangerous conditions on public property." Manna v. State, 129 N.J. 341, 347 (1992). The Act defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). A public entity is liable for a dangerous condition on its property

> if the plaintiff establishes that the property was in a
> dangerous condition at the time of the injury, that the

injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

. . . .

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this subsection shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

Thus, for liability to attach, a plaintiff must establish: 1) a "dangerous condition" existed on the property at the time of the injury; 2) the dangerous condition proximately caused the injury; 3) the dangerous condition "created a reasonably foreseeable risk of the kind of injury which was incurred," 4) either a) the dangerous condition was caused by a negligent employee or, alternatively, b) the public entity knew or should have known about the condition, and 5) the entity's conduct was "palpably unreasonable." Vincitore v. Sports & Expo. Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2). The "plaintiff bears the burden of proving that [the County] acted in a palpably unreasonable

manner." Coyne, 182 N.J. at 488 (citing Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003)).

We need not determine if plaintiff demonstrated the pothole was a dangerous condition or that it proximately caused plaintiff's injuries. The trial court ruled the County did not have actual or constructive notice of the pothole. We concur. There is no evidence the County had actual notice of the pothole before the accident. Therefore, in order to be liable, plaintiff must show the County had constructive notice of the pothole.

The County "shall be deemed to have constructive notice of a dangerous condition of property 'only if the plaintiff establishes that the condition existed for such a time and was of such a dangerous nature that the [County], in exercising due care, should have discovered the condition and its dangerous character.'" Polzo v. Cty. of Essex, 196 N.J. 569, 585 (2008) (Polzo I) (quoting N.J.S.A. 59:4-3(b)). There is no evidence how long the pothole existed before the accident. Therefore, the County cannot be deemed to have constructive notice of the alleged dangerous condition.

Plaintiff has not shown the County had actual or constructive notice of the pothole. Absent such notice, plaintiff's claim fails.

A-2074-17T4

Second, "no liability will be imposed 'upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.'" Ibid. (quoting N.J.S.A. 59:4-2). The TCA recognizes that "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." N.J.S.A. 59:1-2.

We agree with the trial court that the County's inaction in repairing River Avenue was not palpably unreasonable. The term palpably unreasonable "implies behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). "[F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Id. at 195-96 (quoting Kolitch, 100 N.J. at 493). "Although ordinarily the question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury, in appropriate circumstances, the issue is ripe for a court to decide on summary judgment." Polzo II, 209 N.J. at 75 n.12.

11

Here, viewing the evidence in the light most favorable to plaintiff, it is not manifest and obvious that no prudent person would approve of the County's course of inaction. In reaching this conclusion, we are guided by our Supreme Court's decision in Polzo II. There, the Court held that "a county [could not] be held liable for a fatal accident that occurred when a person lost control of her bicycle while riding across a two-foot wide, one-and-one-half inch depression on the shoulder of a county roadway." Id. at 55. The Court ruled "that the County's failure to correct this depression before the tragic accident was [not] 'palpably unreasonable.'" Id. at 56. We find the Polzo II Court's analysis of liability for a bicyclist's use of the shoulder, which is not designed for such use, id. at 70-71, to be equally applicable to a pedestrian walking across the roadway at a point that is not designated as a crosswalk.

In Polzo II, our Supreme Court emphasized the "'roadway' is 'that portion of a highway . . . ordinarily used for vehicular travel.'" Id. at 70 (quoting N.J.S.A. 39:1-1). "By the Motor Vehicle Code's plain terms, roadways generally are built and maintained for cars, trucks, and motorcycles," not pedestrians. Id. at 71. "Potholes and depressions are a common feature of our roadways. However, 'not every defect in a highway, even if caused by negligent maintenance, is

actionable.'" Id. at 64 (quoting Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979)).

Similar to the risks faced by bicyclists, "inherent dangers" also confront pedestrians "on roadways that are not faced by operators of motor vehicles." Id. at 71. "[A] pothole or depression" in the roadway "that a car would harmlessly pass over" might cause a pedestrian to trip and fall. Ibid.

Plaintiff failed to show the County was palpably unreasonable because it did not allocate its limited resources for the discovery and repair of a pothole in the middle of the roadway so it would be safer for pedestrians to cross there. "Roadways generally are intended for and used by operators of vehicles." Ibid. Thus, it was not palpably unreasonable for the County to not repair a pothole "that a car would harmlessly pass over," to prevent the tripping of a pedestrian who was not in a designated crosswalk. "Public entities do not have the ability or resources to remove all [roadway] dangers peculiar to" pedestrians. Ibid. "Roadways cannot possibly be made or maintained completely risk-free for" pedestrians. Ibid. "Because the roadway is 'that portion of a highway . . . ordinarily used for vehicular travel,' a public entity — in choosing when and what repairs are necessary — might reasonably give lesser priority to" fixing

potholes harmless to vehicles. Id. at 77 (alteration in original) (quoting N.J.S.A. 39:1-1).

Courts do "not have the authority or expertise to dictate to public entities the ideal form of road inspection [and repair] program, particularly given the limited resources available to them." Id. at 69. The County is responsible for maintaining an extensive network of roads, including 1.7 miles of River Avenue. "[I]n view of the County's considerable responsibility for road maintenance in a world of limited public resources," the discovery and repair of the three-inch deep pothole "might not have been deemed a high priority." Id. at 77-78. We cannot conclude the County acted in a palpably unreasonable manner by failing to discover and repair the pothole before the accident. For this additional reason, plaintiff's claim fails.

In light of our ruling, we, like the trial court, do not reach the issue of whether plaintiff's injuries met the TCA's threshold of permanency and substantial impairment of bodily function.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2074-17T4