**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1500-22

STUDIO 45 DISCOTHEQUE,
INC., owned and operated by
EDUARDO GONZALEZ,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
HUDSON COUNTY
PROSECUTOR'S OFFICE,
and UNION CITY POLICE
DEPARTMENT,

     Defendants-Respondents.

_____

        Submitted October 16, 2024 – Decided November 13, 2024

        Before Judges Gilson, Firko, and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4458-20.

        Yasmin Estrella, attorney for appellant.

        Matthew J. Platkin, attorney for respondents State of New Jersey and Hudson County Prosecutor's Office (Donna Arons, Assistant Attorney General, of counsel;

Phoenix N. Meyers, Deputy Attorney General, on the brief).

Sheffet and Dvorin, PC, attorneys for respondent Union City Police Department (Ethan Jesse Sheffet, on the brief).

PER CURIAM

Plaintiff Studio 45 Discotheque, Inc. and Eduardo Gonzalez appeal from: (1) the March 11, 2022 order dismissing the second amended complaint against defendant Hudson County Prosecutors Officer (HCPO) for failure to state a claim; (2) the June 15, 2022 order denying his motion to reconsider the March 11, 2022 order; (3) the September 9, 2022 order dismissing default against defendant Union City Police Department (UCPD) and allowing it time to respond because UCPD was not properly named and the second amended complaint was not properly served on the clerk; and (4) the December 8, 2022 order dismissing the second amended complaint against UCPD and denying his motion to amend the second amended complaint to name the City of Union City as a direct defendant. We affirm all of the orders under review.

I.

Factual Background

Gonzalez operated an after-hours bar and was under investigation for selling alcohol without a license. On June 1, 2010, at approximately 2:00 a.m.,

2

UCPD executed a warrant to search Studio 45 for violations of the Alcoholic Beverage Control (ABC) Act,[1] namely, the sale of alcoholic beverages without a license. Gonzalez owned and operated Studio 45. The UCPD seized bottles of beer, alcohol, drink mixers, non-alcoholic beverages, kitchen equipment, bar furniture, and electronic equipment. The UCPD kept control of the premises. The legality of the seizure was never challenged.

Gonzalez was charged with multiple fourth-degree offenses for the illegal sale and distribution of alcoholic beverages without a license and maintaining a nuisance. On June 22, 2012, he was ultimately convicted on fourth-degree charges of distributing alcohol without a license and sentenced to three years' probation.

Meanwhile, on August 18, 2010, seventy-nine days after the property was seized, Gonzalez submitted a Request for Return of Property form to the HCPO, requesting the return of property seized from Studio 45. The form named the "Union City Municipal Court" as the entity which seized the property.

---

[1] N.J.S.A. 33:1-1 to -103. The ABC Act established the Division of Alcohol Beverage Control to "strictly regulate alcoholic beverages to protect the health, safety and welfare of the people of this State." N.J.S.A. 33:1-3.1(b)(1). The ABC Act also directs officers to "investigate, under proper search warrant when necessary," whenever they believe there is reasonable grounds to believe persons are committing or have committed a misdemeanor under the ABC Act. N.J.S.A. 33:1-66(a).

3

On August 27, 2010, eighty-eight days after seizure of the property, Gonzalez filed a Tort Claims Act (TCA) notice with the City of Union City, alleging loss of business, income, and salary, due to the property seizure and claiming $10 million in damages. In the TCA notice, Gonzalez alleged that the police "planted, fabricated, adultered [sic], what they later claimed were alcoholic beverages in the premises" at the direction of the Union City mayor and UCPD with the "expressed objective of closing the business" and destroying his "livelihood and earnings." The TCA notice named the City of Union City, its mayor, its Chief of Police of the UCPD, and the "[c]ommissioners" as the parties at fault.

The TCA notice described Gonzalez's injuries as "[p]sychological and mental distress, injuries, anguish, humiliation, depression, anxiety, panic attack," and loss of "property and . . . profits of the[] property, both present and in [the] future." Gonzalez estimated the value of the property was "one million dollars." He also claimed his wages were $300,000.00 per week as manager of Studio 45, and his wages were lost "forever." The form was not signed.

A-1500-22

After a forfeiture action[2] brought by HCPO under N.J.S.A. 2C:64-1 to -13 was dismissed when the State failed to appear at the June 26, 2012 hearing, Gonzalez moved to "repossess" the seized property, while his criminal appeal was pending.

On October 24, 2012, HCPO attempted to reinstate the forfeiture action. On December 7, 2012, HCPO's motion to reinstate the forfeiture action was denied. On January 11, 2013, the court denied Gonzalez's motion to "repossess" the seized property due to the pending appeal of his criminal conviction. The court ordered that "all evidence shall continue in possession of [the] State until appellate proceedings are exhausted."

After his conviction was affirmed, State v. Gonzalez, No. A-5981-11 (App. Div. Oct. 25, 2013), Gonzalez again moved to repossess the seized property. On June 20, 2014, the motion was again denied. On July 25, 2014, Gonzalez's motion for reconsideration was denied. In 2015, Gonzalez appealed to this court from the denial of his motion. On March 4, 2016, we affirmed denial of Gonzalez's motion to compel the State to compel return of the property, State v. Studio 45 Discotheque, Inc., A-0247-14 (App. Div. Mar. 4, 2016). We

---

[2] Docket No. HUD-L-4600-10. The forfeiture matter was filed while the criminal matter was pending.

determined that the seized property was being held "temporarily" in accordance with a Directive issued by the Office of the Attorney General, which required the State to retain evidence for five years "from the date of conviction or . . . expiration of sentence, whichever is later."  See Off. of the Att'y Gen., Law Enf't Directive No. 2011-1, Attorney General Guidelines for the Retention of Evidence (rev. Jan. 6, 2011).  Thus, the seized property could not be released until June 22, 2020—five years after Gonzalez's sentence was complete.

On August 28, 2020, after the five-year period expired, Gonzalez sent an email to the HCPO requesting return of the seized property.  He attached the inventory of seized items prepared on August 18, 2020.  On October 2, 2020, Gonzalez followed up in an email asking "[w]hen should we expect the property to be returned . . . ?"  Following this email, Gonzalez "assumed that the [HCPO] was not intending to return [his] property."

On December 4, 2020, Gonzalez filed a motion seeking an order "commanding" the HCPO "and/or [UCPD] to release all property that was seized back on June 1, [2010], by the [UCPD]."  Although the caption to the motion contained the forfeiture action's docket number, the filing was listed as a "complaint with jury demand" on eCourts and assigned a new docket number, HUD-L-4458-20, which is the subject of the matter under review.  This filing

6

had the forfeiture action's caption and did not name HCPO or UCPD as parties. In a letter dated January 4, 2021—mistakenly dated 2020—Gonzalez stated that the caption was correct.

On February 11, 2021, Gonzalez filed an order to show cause (OTSC) under the forfeiture action's docket number that only named the State and failed to name either HCPO or UCPD as parties. The filing included a verified complaint for an order seeking to compel the State to return the seized property, or in the alternative, reimburse Gonzalez for any item not returned. Gonzalez also served HCPO and UCPD with the OTSC and verified complaint.

On April 21, 2021, under the forfeiture action's docket number, Gonzalez requested default be entered against HCPO and UCPD for their failure to respond to the verified complaint and OTSC. Gonzalez later withdrew this request.

On June 18, 2021, the complaint under the new docket number—HUD-L-4458-20—was dismissed without prejudice for lack of prosecution. On July 20, 2021, Gonzalez filed a motion under the new docket number to reinstate the complaint and OTSC under the forfeiture action matter, again serving HCPO and UCPD, and requested leave to "amend the [OTSC], verified complaint, and default judgment to list the parties correctly." On the same day, Gonzalez

7

requested an entry of default against HCPO and UCPD in the forfeiture action, filing the request under the new docket number but captioning it with the forfeiture action's docket number.

On August 5, 2021, Gonzalez filed an OTSC and verified complaint under the new docket number, identical to the February 11, 2021 forfeiture action's complaint and OTSC, apart from naming himself as plaintiff and the State as defendant. That same day, Gonzalez also moved for the entry of default, under the new docket number, against HCPO and UCPD in the forfeiture action.

On August 6, 2021, in an order entered under the new docket number, the court granted Gonzalez's motion to reinstate the OTSC and verified complaint under the forfeiture action but denied "the motion to [enter] default filed on April 22, 2021, and to amend the [OTSC], verified complaint, and default motion." In addition, the court granted the motion filed under the new docket number to enter default judgments against defendants, the State of New Jersey, HCPO, and UCPD (collectively defendants) under the forfeiture action's docket number.

On September 24, 2021, the State and HCPO moved to vacate the default judgments entered against them, extend time to file responsive pleadings, and dismiss Gonzalez's complaint. On October 12, 2021, Gonzalez filed a second

amended complaint under the new docket number, without seeking leave of court. In count one, Gonzalez alleged defendants "have continued to unlawfully deprive" him of his property "without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of 42 U.S.C. § 1983."

Count two similarly alleged defendants' unlawful retention of Gonzalez's property "valued well over $265,000[.00] is excessive in comparison" to his sentence of probation.

Count three alleged that defendants have "converted [Gonzalez's] property into [their] own without a court order or an opportunity for [Gonzalez] to be heard."

Count four alleged common law fraud, claiming "defendants intended to deceive [Gonzalez] into believing that the [Law Enf't Directive No. 2011-1] was applicable" in this instance, and that defendants would return [his] property after five years.

On October 25, 2021, the court heard argument on the State's motion to dismiss Gonzalez's amended complaint for failure to state a claim. The court vacated the default judgment against defendants and allowed them time to file a

responsive pleading. Defendants withdrew their motions to dismiss the complaint, without prejudice.

On November 29, 2021, Gonzalez requested that the court enter default judgments against the State and UCPD but not HCPO. That same day, HCPO on behalf of itself and the State, moved to dismiss Gonzalez's "amended" complaint under Rule 4:6-2(e), maintaining it had not received any notice that a lawsuit had been filed. HCPO further noted it did not have the seized property in question. The next day, November 30, 2021, default judgment was entered against UCPD.

At a hearing held on January 7, 2022, Gonzalez alleged the Hudson County Prosecutor, in his personal capacity rather than his official capacity, was also liable and requested leave to amend his pleadings to name the prosecutor as a direct defendant. In response, HCPO advised the court that the evidence and property detective "had never received any sort of inventory or letter" from Gonzalez.

On March 11, 2022, HCPO's motion to dismiss the amended complaint was granted. In an accompanying memorandum of decision, the court analyzed Gonzalez's claims for alleged violations of: 42 U.S.C. § 1983 and Fourteenth Amendment due process claims, the Eighth Amendment, his right to be free of

excessive fines, conversion, and common law fraud. The court held HCPO was not a "person" under § 1983, and HCPO was "acting as an arm of the State when prosecuting [Gonzalez]."

The court also found Gonzalez's complaint was "time-barred" under the TCA and rejected his argument that he filed a timely notice of tort claim. The court reasoned Gonzalez's own exhibits showed his purported TCA notice was "sent to the wrong email address." The court highlighted that Gonzalez's counsel sent the notice to "espinel@hcpo.org" when the request for return of property form should have been emailed to "cespinel@hcpo.org."

The court rejected Gonzalez's argument that the ninety-day deadline to file the TCA notice would have been January 21, 2021, based on Gonzalez's date of accrual calculation starting in late October 2020, when "he assumed defendant [HCPO] was in fact intending on depriving him of his property without an opportunity to be heard." The court emphasized the January 21, 2021 date at that point "was over a year ago."

In rejecting Gonzalez's argument that he showed substantial compliance with the TCA notice requirements, the court concluded Gonzalez's filing of a complaint was not a substitute, citing Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 171-72 (App. Div. 1986). The court found that even if the TCA

applied, Gonzalez's claim would be time-barred. The second amended complaint was dismissed without prejudice for failure to state a claim pursuant to Rule 4:6-2(e). Gonzalez filed a motion for reconsideration, which was denied on June 15, 2022.

On July 20, 2022, UCPD filed a notice of motion to vacate the default judgment entered against it and allowing it time to file a responsive pleading. At the August 5, 2022 hearing, counsel for the City of Union City argued that suing UCPD was inappropriate, and the correct party in interest was the "City of Union City." Although counsel represented HCPO and the State in the prior hearing, he explained the City of Union City had not responded to the complaint because the initial filing did not name it as a party. The court agreed that UCPD was "not even a legal entity that should have been even named in the complaint, that was never properly amended. Never served." On September 9, 2022, the court granted the motion.

On September 12, 2022, UCPD filed a motion to dismiss Gonzalez's amended complaint. Gonzalez opposed the motion and filed a cross-motion, seeking leave to amend the amended complaint "to name [the] City of Union City as [a] direct [d]efendant and to raise further causes of action." On October 20, 2022, the court heard arguments on the motions and reserved decision.

On December 8, 2022, the court granted UCPD's motion to dismiss Gonzalez's complaint and denied Gonzalez's cross-motion. Memorializing orders were entered. This appeal followed.

On appeal, Gonzalez argues the trial court erred:

> (1) in finding HCPO was not a person under 42 U.S.C. § 1983 and thus not liable;
>
> (2) in finding UCPD was not liable under 42 U.S.C. § 1983 because it was time-barred by the statute of limitations;
>
> (3) in finding HCPO not liable under the TCA because the claims are time-barred pursuant to the TCA;
>
> (4) in denying his motion to reconsider;
>
> (5) in finding UCPD is not liable under the TCA and 42 U.S.C. § 1983;
>
> (6) in not deciding his collateral estoppel claim;
>
> (7) in not deciding his judicial and equitable estoppel claims;
>
> (8) in dismissing the second amended complaint for failure to state a claim; and
>
> (9) in vacating default against UCPD.

We are convinced Gonzalez failed to comply with the notice provisions under the TCA. For that reason alone, we affirm the orders under review and dismissal of the second amended complaint.

13

II.

Our review of a trial court's ruling on a motion to dismiss is de novo. Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017) (citing Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016)). Since our "review is plenary[,] . . . we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (citation omitted). In considering a motion under Rule 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences. Watson, 453 N.J. Super. at 47.

"A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (internal quotations and citation omitted). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (internal quotations and citation omitted). Therefore, the pleading must be "search[ed] . . . in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Id. at 452 (internal quotations and citation omitted).

A-1500-22

The TCA was passed to balance the "inherently unfair and inequitable results which occur in the strict application of the tradition doctrine of sovereign immunity" with the fact that "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." N.J.S.A. 59:1-2. "The guiding principle of the [TCA] is that 'immunity from tort liability is the general rule and liability is the exception." Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). One of the most important limitations imposed by the TCA are the provisions governing a potential claimant's obligation to file a notice of tort claim prior to initiating litigation. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013).

Under N.J.S.A. 59:8-8, a claimant must file a notice of claim with a public entity within ninety days of accrual of the claim. The ninety-day period may be extended under certain circumstances provided the claimant files a motion to deem the notice of claim timely filed. N.J.S.A. 59:8-9. Such a motion requires the claimant to: (1) present extraordinary circumstances for failing to timely file the notice of claim; (2) submit the claim no later than one year from the accrual date; and (3) demonstrate the absence of prejudice to the public entity

15

as a result of the late notice. <u>Rogers v. Cape May Cnty. Off. of Pub. Def.</u>, 208 N.J. 414, 427-28 (2011). "After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his [or her] failure to have filed a notice of claim, and a consequent action at law must fail.'" <u>Pilonero v. Twp. of Old Bridge</u>, 236 N.J. Super. 529, 532 (App. Div. 1989) (quoting <u>Speer v. Armstrong</u>, 168 N.J. Super. 251, 255-56 (App. Div. 1979)).

To determine whether a notice of claim was timely filed under N.J.S.A. 59:8-8, a court must decide "the date on which the claim accrued." <u>Ben Elazar v. Macrietta Cleaners, Inc.</u>, 230 N.J. 123, 133-34 (2017). A judge's determination of the accrual date for a claim under the TCA begins with deciding when the claim arose, followed by determining whether the claim was filed within ninety days of the accrual date and, if not, whether extraordinary circumstances justify the late notice of claim. <u>Beauchamp v. Amedio</u>, 164 N.J. 111, 118-19 (2000).

While the date is typically the date on which the underlying tortious action occurred, "common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his injury or does not know that a third party is liable for his injury." <u>Ben Elazar</u>, 230 N.J. at 134 (quoting <u>Beauchamp</u>, 164 N.J. at 117).

16

A claim must be presented to the public entity through certified mail to the public entity, and service upon the entity constitutes constructive service on any individual employee of that entity involved in the claim. N.J.S.A. 59:8-10. The notice must include "a general description of the injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim." N.J.S.A. 59:8-4. The notice must also be signed "by the claimant or by some person on his behalf." N.J.S.A. 59:8-5.

Under Rule 4:49-2, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). We review a "trial court's denial of plaintiff's motion for reconsideration for abuse of discretion." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). Abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Kornbleuth, 241 N.J. at 302 (quoting Pitney Bowes Bank, 440 N.J. Super. at 382).

A motion for reconsideration "is primarily an opportunity to seek to convince the court that either (1) it has expressed its decision based upon a

palpably incorrect or irrational basis, or (2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Id. at 301 (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)).

"[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010). "Said another way, a litigant must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Ibid.

Moreover, "[r]econsideration cannot be used to expand the record and reargue a motion." Cap. Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). "[I]f a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." D'Atria, 242 N.J. Super. at 401.

Here, the property was seized on June 1, 2010, but as per the Directive, the State must retain evidence for five years "from the date of conviction or the expiration of sentence, whichever is later." Law Enf't Directive No. 2011-1, at 11. On June 22, 2012, Gonzalez was placed on probation for three years. Therefore, under Law Enf't Directive No. 2011-1, the State needed to retain the seized property until June 21, 2020. Gonzalez's letter requesting return of the property was dated August 18, 2020, fifty-seven days later. The ninety-day period to file the TCA notice clock started to run on June 21, 2020, the day the property could have been retrieved.

Gonzalez thought initially that the HCPO would comply. According to Gonzalez, sometime between August and October 2020, he "assumed that [HCPO] was not intending to return his property" and he "did not know the property was going to be retained by the State until he submitted a form to retrieve his property" in the August to October 2020 timeframe. Thus, Gonzalez contends the accrual date shall fall within that period. We disagree.

Based on our do novo review of the record, the accrual date of Gonzalez's claim was June 21, 2020, five years after the date he finished his probational sentence. Ninety days from June 21, 2020 was September 19, 2020. There is

19

no dispute that no notice of claim was filed on behalf of Gonzalez during the ninety-day period.

In addition, there is no dispute that Gonzalez was represented by counsel during that period. Moreover, Gonzalez failed to submit an affidavit or certification demonstrating extraordinary circumstances for his failure to timely file a TCA notice. We are satisfied the court properly determined a complaint is "not . . . a substitute for the notice required by statute," even if it is filed within the ninety-day period. Guzman, 214 N.J. Super. at 171-72 (citations omitted).

We also reject Gonzalez's argument that the TCA notice filed in August of 2010 was sufficient. As we stated, that notice was insufficient because the injuries complained of included personal injury, mental distress, economic damages, constitutional violations and defamation, and not return of the property. The 2010 notice also alleged different responsible parties from those Gonzalez now asserts.

In sum, the 2010 notice disputed the legality of the initial seizure and implied a conspiracy of "persecution" by the mayor, City of Union City, and UCPD against Gonzalez "with the expressed objective of closing the business" and "destroying [his] means of livelihood and earnings . . . ." Presently, Gonzalez does not challenge the validity of the search warrant or the legality of

20

the seizure. He only disputes retention of the property. The 2010 notice is also unsigned in violation of N.J.S.A. 59:8-5, which requires a TCA claim be "signed by the claimant or by some person on his [or her] behalf." This includes counsel acting in the claimant's interest, even if not retained or authorized to do so. S.E.W. Fuel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 121 (1977) (concluding an attorney can move for leave to file late notice of claim on behalf of claimant without having been retained to do so because he was not an "officious intermeddler[] in presuming to make the . . . motion on [the claimant's] behalf.")

The Legislature established a detailed statutory scheme effectuating a waiver of immunity for tort claims in limited circumstances. It is necessary for a claimant to follow the statutory steps carefully to file a timely claim or demonstrate extraordinary circumstances warranting the filing of a late notice of claim. We agree with the court that Gonzalez failed to timely file a TCA notice within ninety days of the accrual of his claim.

Because we have determined Gonzalez failed to file a timely TCA notice based on our de novo review of the record, we need not address his other arguments raised on appeal. We therefore affirm the March 11, 2022 order dismissing the second amended complaint against the HCPO. We also affirm the June 15, 2022 order denying Gonzalez's motion for reconsideration of the

March 11, 2022 order, the September 9, 2022 order dismissing default against UCPD, and the December 8, 2022 order dismissing the second amended complaint against UCPD and denying his motion to amend the second amended complaint to name the City of Union City as a direct defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION