12 A.3d 250 (2011)
418 N.J. Super. 125
Mark PETERSEN, Plaintiff-Appellant,
v.
TOWNSHIP OF RARITAN, Defendant-Respondent.
No. A-3290-09T3.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2010.
Decided February 9, 2011.
*252 David B. Beckett argued the cause for appellant (Mets Schiro & McGovern, LLP, attorneys; Mr. Beckett, of counsel and on the brief; Brian J. Manetta, Woodbridge, on the brief).
Littie E. Rau, Springfield, argued the cause for respondent (Ruderman & Glickman, PC, attorneys; Ms. Rau, of counsel and on the brief).
Before Judges AXELRAD, LIHOTZ and J.N. HARRIS.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
We are asked to examine whether the terms of a collective bargaining agreement (CBA),[1] which was in effect upon the retirement of a municipal police officer, mandates that the retiree be vested in the specific insurance benefit plan offered at the time of retirement. Plaintiff Mark Petersen retired from the municipal police force of defendant Township of Raritan. At his retirement, plaintiff was provided health insurance, without cost, pursuant to the terms of the CBA then in effect between defendant and the Police Benevolent Association Local 337(PBA). Several years after he retired, plaintiff was notified that defendant discontinued all municipal employee participation in the insurance plan in which plaintiff was enrolled. Because he and other retirees were afforded the same benefits as full-time employees, plaintiff was given the option of receiving free benefits under a different health plan or continuing his participation in the original plan, subject to his payment of a portion of the premium expense.
Plaintiff filed this action, asserting defendant's modification of the level and type of benefits granted at retirement violated the terms of the CBA. The Law Division disagreed, concluding the terms of the CBA did not entitle plaintiff to remain as a participant in the original plan at its sole expense, but only required that he be provided with the same benefits defendant offered all of its municipal employees. The court granted defendant's request for summary judgment dismissal of plaintiff's complaint.
On appeal, plaintiff urges the court erred, as he suggests disputes of material fact were presented precluding summary judgment. Additionally, he argues the *253 court erred in its interpretation of the level and types of benefits provided by the governing CBA which, based upon the doctrine of equitable estoppel, cannot be modified. We disagree and affirm.
The facts are derived from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).
At the time of his retirement from the Raritan Township Police Department on August 1, 1999, plaintiff was a member of the PBA, which had negotiated the CBA for the period 1997-1999. Pursuant to the terms of the CBA, defendant provided and paid for medical and dental insurance benefits for member employees and certain retirees. Article XXIII, Section 1 provided:
The employer agrees to continue all insurance[]s currently in effect upon the signing of this agreement, for employees and their dependents, at the same levels of coverage enjoyed under the custom U.S. Healthcare Patriot V and X Plan, the Delta Dental Plan, and the Bollinger Prescription Plan. The Bollinger Prescription Plan will be modified to include a ($0) co-pay for a generic drug, and a ($6) co-pay for a name brand drug, effective in the calendar year 1998.
Also relevant to our review is Article XXIII, Section 5 of the CBA, which stated, "Any employee who retires after twenty-five (25) or more years of service, . . . shall continue to receive all health and medical benefits provided by the employer for the remainder of his life. Such coverage shall be provided at the expense of the employer."
When plaintiff retired, defendant offered its employees a choice of two health plans: a traditional indemnity plan (traditional plan) and a point of service plan (POS plan). Plaintiff participated in the traditional plan.
On June 12, 2008, defendant sent all active and retired employees a memo, authored by Allan Pietrefesa, defendant's chief financial officer and business administrator, announcing changes to health and medical benefits, which would become effective on July 1, 2008. Most significant was that "future enrollment in a traditional plan" was being eliminated in favor of a POS plan, which would be the offered benefit to all eligible participants. The memo informed those who were then covered by the traditional plan they had the option to enroll in the POS plan, for which defendant would bear the full cost. Alternatively, any participant then enrolled in the traditional plan who desired to continue participation could do so, on the condition that the participant paid the premium cost in excess of the amount of the POS premium.[2] The changes were made pursuant to a bilateral agreement between defendant and the PBA and incorporated into the 2009-2012 CBA adopted by defendant and the PBA.[3] Plaintiff chose not to switch enrollment to the POS plan and elected to retain his coverage under the traditional plan. Consequently, he paid an annual premium differential of $2,590.08.
*254 Although this was the first time defendant and the PBA agreed to limit the types of health insurance plans available, it was not the first time the benefits provided were modified. In 1998, the terms of service were modified to allow an employee to serve five of the required twenty-five years of service in another municipality. Dental benefits and the opportunity to obtain prescriptions by mail were added. In 2000, spouse and dependent coverage was provided. In 2005, based on its need to contain costs, defendant changed health insurance carriers, but continued to offer the choice of a traditional indemnity or a POS plan. The most recently adopted CBA modified the insurance provisions limiting benefits to only retirees who were living in the United States, but grandfathering current retirees living abroad.
Plaintiff filed his complaint on August 13, 2008, alleging the elimination of the traditional plan benefits violated the 1997-1999 CBA. At the completion of discovery, defendant moved for summary judgment. Judge Buchsbaum heard oral argument and issued a written opinion attached to the summary judgment dismissal of plaintiff's complaint. He rejected plaintiff's assertions of equitable estoppel because plaintiff provided no factual support for his broad allegations and had "no specific recollection" of a representation or representative who related "the unwritten and unidentified" assurances that his benefits would never change. Limited to the language of the contract, the court found plaintiff was entitled to insurance, but not the traditional plan. This appeal ensued.
The standard governing summary judgment motions is well-settled. A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill, supra, 142 N.J. at 540, 666 A.2d 146. On appeal, we apply the same standard as the motion judge. Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 491, 867 A.2d 1159 (2005); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
In reviewing whether or not a genuine issue as to any material fact challenged is presented, the motion judge cannot weigh the credibility of the evidence. Parks v. Rogers, 176 N.J. 491, 502, 825 A.2d 1128 (2003); Brill, supra, 142 N.J. at 540, 666 A.2d 146. The court must decide from the record whether
"the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party. . . . If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a `genuine' issue of material fact for purposes of R. 4:46-2." Brill, supra, 142 N.J. at 540, 666 A.2d 146.
"[U]nsubstantiated inferences and feelings" are not sufficient to support or defeat a motion for summary judgment. Oakley v. Wianecki, 345 N.J.Super. 194, 201, 784 A.2d 727 (App.Div.2001). In addition, "[b]are conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J.Super. 384, 399-400, 170 A.2d 505 (App.Div. 1961).
*255 Plaintiff first suggests this dispute involves "the level of coverage that one who retires under th[e CBA] is entitled to receive." In that regard, he contends there are disputed factual issues regarding the comparability of the traditional and the POS medical plans, which can only be resolved by a factfinder, obviating summary judgment. Alternatively, he maintains he had a contractual right to receive the coverage equivalent of the traditional plan, at no cost, for his lifetime and defendant must be estopped from changing his coverage. We reject the notion that there is a factual dispute and we are not persuaded by plaintiff's legal arguments.
The specifics of the two health benefit plans were laid out in the pleadings. The motion judge was provided with the provisions of the newly offered POS plan, as well as the traditional plan in which plaintiff was enrolled. In fact, the difference in the two plans was not at issue. Rather, the court's determination was a legal one, that is, what were the contractual obligations between the parties? Judge Buchsbaum properly focused on the terms of the CBA.
The interpretation or construction of a contract is generally a legal question, which is "suitable for a decision on a motion for summary judgment." Driscoll Const. Co., Inc. v. State, 371 N.J.Super. 304, 313, 853 A.2d 270 (App.Div.2004) (internal quotations and citations omitted). Examining the parties' agreement, we "read the document as a whole in a fair and common sense manner[,]" Hardy ex. rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103, 965 A.2d 1165 (2009), and "do not supply terms to contracts that are plain and unambiguous, nor do we make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Estate of Guy, 193 N.J. 108, 143, 936 A.2d 414 (2007); Graziano v. Grant, 326 N.J.Super. 328, 342, 741 A.2d 156 (App.Div.1999). Only when there is "uncertainty, ambiguity or the need for parol evidence" will the interpretation of a contract be left to the jury. Great Atl. & Pac. Tea Co., Inc. v. Checchio, 335 N.J.Super. 495, 502, 762 A.2d 1057 (App.Div. 2000).
We also note that the insurance benefits granted to plaintiff are statutorily authorized by N.J.S.A. 40A:10-23. The statute presents the "general rule," that is, retirees "shall be required to pay for the entire cost of [health] coverage[.]" Ibid. Municipalities, however, are given the "discretion to assume the entire cost of such coverage" for employees "who have retired after. . . a period of service up to 25 years with the [municipality] . . . under uniform conditions as the governing body of the local unit shall prescribe." Ibid. Understanding the legal principles underpinning our review, we consider the language of the CBA in light of plaintiffs arguments.
Plaintiff's position is that the language of Article XXIII, Section 5, granting retiree health benefits for life, is informed by Section 1, which provides "[t]he employer agrees to continue all insurance currently in effect upon the signing of this agreement for employees and their dependents, at the same levels of coverage." He concludes these two clauses, when read together, require defendant to provide all retirees with the exact health and medical benefits they were granted upon retirement for the remainder of their life. Accordingly, plaintiff argues that defendant must continue to provide him with the benefits under the traditional plan even if it no longer offers this plan to active employees. We disagree.
The language of the CBA did not link the provisions of Section 5 to Section 1. As Judge Buchsbaum observed, Section 1 applied to current employees and their dependents. *256 That provision specifically included language fixing the level of benefits for the term of the agreement. Section 5, in discussing the benefits extended to retirees, however, contained no similar language. Section 5 obligated defendant to provide plaintiff with health benefits for life as "provided by the employer"; it did not extend a particular plan or level of coverage.
Other terms of the CBA reflect the parties' intention that modification was acceptable and the provisions remained unaltered for a limited period. For example, the CBA included a savings clause, allowing its modification by agreement of the PBA and defendant. In fact, the CBA under review was amended in 1998 following a grievance involving plaintiff, which modified the necessity that the predicate twenty-five years of service were not exclusively with defendant. These changes reflect the parties' intention that the agreement's terms were not "immutable," thus defeating plaintiff's contention.
Past dealings between the parties also belie plaintiff's claim. Pietrefesa explained defendant's steadfast compliance with the mandate set forth in N.J.S.A. 40A:10-23, which requires municipalities providing benefits to employees do so "under uniform conditions." He certified defendant's practice was to "uniformly administer the health insurance plan to both employees and retirees, in real time. Whatever changes were made to co-pays and/or deductibles (always the insured's responsibility), these changes were made across-the-board, whether the change was pro or con." In his deposition, plaintiff acknowledged this fact, admitting he had taken advantage of previous changes made to the insurance clause as negotiated in CBAs subsequent to his retirement, thus recognizing the benefits were not restricted to the level offered at his retirement.
To read Section 5 as plaintiff suggests requires the addition of terms to an agreement that we determine are unambiguous. As we stated, a court must not "make a better contract for . . . the parties than the one which the[y] . . . created." Maglies, supra, 193 N.J. at 143, 936 A.2d 414.
Plaintiff offers additional arguments to support his claim to remain enrolled in the traditional plan. Citing Bonzella v. Monroe Township, 367 N.J.Super. 581, 844 A.2d 538 (App.Div.2004), he asserts he is "vested" in the benefits and no change affecting vested benefits enjoyed by retirees was permissible. This argument is without merit.
In Bonzella, supra, the married plaintiffs each worked for the municipality for twenty-five years and at retirement were entitled to lifetime health benefits for themselves and their dependents at the municipality's expense. 367 N.J.Super. at 583, 844 A.2d 538. At the wife's retirement, the defendant advised she must choose between coverage under her own individual plan or coverage as a dependent spouse under her husband's plan. Id. at 586, 844 A.2d 538. This choice eliminated the advantage of cross-coverage, resulting when two individual plans allowed dependent coverage. Ibid. In our review, we held the plaintiffs "each worked the required twenty-five years, [so that] they now each ha[d] a contractual right to the promised benefits, which the Township cannot unilaterally abrogate." Id. at 584, 844 A.2d 538. We noted that "[p]ursuant to N.J.S.A. 40A:10-23, health care coverage for retired municipal employees can only be provided on a uniform basis, by ordinance or resolution; benefits cannot be denied on the basis of budget-driven ad hoc determinations by municipal officials." Id. at 583-84, 844 A.2d 538.
Here, defendant did not eliminate the health care coverage to which plaintiff was *257 entitled. The CBA stated it was defendant's obligation to continue "all health and medical benefits provided by the employer." Any attempt to rescind the obligation to provide health benefits would have been constrained. See Gauer v. Essex Cnty. Div. of Welfare, 108 N.J. 140, 150, 528 A.2d 1 (1987) (holding benefits "cannot be rescinded unilaterally when the underlying motivation is not preservation of the integrity of the benefit"). However, that did not occur. Here, defendant, with the consent of the PBA, changed only the health care plan, which cannot be viewed as an abrogation of its defined responsibility to provide the contractual benefit. Plaintiff remained entitled to the health care coverage as extended to all employees and retirees alike.
Plaintiff also suggests "health benefits are a part of an employee's compensation" and cannot be lessened. This is an attempt at misdirection. Defendant has not repudiated its contractual obligation to provide insurance benefits beyond the term of the CBA. Further, at no time has defendant sought to eliminate retirees' health insurance or modify its obligation to pay the premiums for the medical insurance plans then in effect.
We conclude defendant's decision to discontinue participation in the traditional plan in favor of the exclusive use of the POS plan did not impermissibly curtail or breach the Section 5 contractual benefits due to plaintiff. Plaintiff and his spouse could remain covered under the POS plan and defendant would be responsible for one hundred percent of the premiums. Plaintiff's choice to continue coverage in the traditional plan at his additional expense is not actionable or compensable.
Plaintiff's final argument seeks to invoke the doctrine of equitable estoppel to bar defendant from modifying the type and level of health benefits he is to receive. We conclude the doctrine is inapplicable.
"The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367, 744 A.2d 649 (2000) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955)). Equitable estoppel is invoked against a municipality "only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course." Maltese v. Twp. of N. Brunswick, 353 N.J.Super. 226, 244-45, 802 A.2d 529 (App.Div.2002). Equitable estoppel is a legal calibration to remedy an otherwise unfair outcome.
Plaintiff is unable to present any representation by defendant that he would forever remain in the traditional plan or that his benefits would never be altered. He relied on his individual interpretation of the CBA provision. Absent reasonable reliance on affirmative assurances, estoppel is unavailable. See Middletown, supra, 162 N.J. at 371-72, 744 A.2d 649 (holding defendant-municipality was equitably estopped from terminating the plaintiff's benefits after he had received repeated assurances that they would continue following his retirement).
Affirmed.
NOTES
[1] Generally, "[i]n public sector labor relations in New Jersey, courts use the terms `collective negotiation' and `collective negotiations agreements' rather than `collective bargaining' and `collective bargaining agreements[,]'" Troy v. Rutgers, 168 N.J. 354, 359 n. 1, 774 A.2d 476 (2001) (citing N.J. Tpk. Employees Union v. N.J. Tpk. Auth., 64 N.J. 579, 581, 319 A.2d 224 (1974)), a term found in the federal Labor Management Relations Act, 29 U.S.C.A. § 141 et seq. Here, the parties have labeled their agreement a "collective bargaining agreement." To avoid any misunderstanding, we have chosen to utilize the parties' designation in our opinion.
[2] The memo also noted another change affecting the cost of prescription co-pays for generic and brand-name drugs and the prescription mail order program.
[3] In 1996, defendant withdrew from the State Health Benefits Program (SHBP). Defendant's unilateral action prompted an unfair labor practice grievance from the PBA. The matter was settled with defendant's agreement to make bilateral benefit changes. In the event defendant makes any unilateral changes, the new benefits must be equal or better than the prior benefits.