**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0289-17T3

JOANNE GREEN,

     Plaintiff-Appellant,

v.

THE BOROUGH OF ENGLEWOOD
CLIFFS and ENGLEWOOD CLIFFS
DEPARTMENT OF PUBLIC WORKS,

     Defendants-Respondents.

_____

          Argued January 10, 2019 - Decided July 9, 2019

          Before Judges O'Connor and DeAlmeida.

          On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5060-15.

          Timothy J. Foley argued the cause for appellant (Law Offices of Jeffrey D. Marks, PC, attorneys; Timothy J. Foley, of counsel; Jeffrey D. Marks, on the briefs).

          David B. Bole argued the cause for respondents (Winne Dooley & Bole, PC, attorneys; David B. Bole, on the brief).

PER CURIAM

Plaintiff Joanne Green appeals from a July 7, 2017 order granting both defendants summary judgment on her claims against them under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3.  She also appeals from an August 18, 2017 order denying reconsideration of the July 7, 2017 order.  We affirm.

I

The salient facts, derived from the motion record and viewed in the light most favorable to plaintiff, see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995), are as follows.  On August 24, 2014, plaintiff was riding her bicycle in the middle of a street located in defendant Borough of Englewood Cliffs (municipality).  After entering an intersection, she decided to make a right turn.  As she turned her wheels to the right, she hit a patch of loose gravel in the middle of the intersection, which caused her to fall to the ground and sustain injuries.  The police took photographs of the gravel on which plaintiff alleges to have skidded.[1]  The gist of her claim was the loose gravel originated from the inadequate repair of either a pothole or other defect on one of the roads that formed the intersection.

---

[1] Copies of these photographs were not included in the record.

A-0289-17T3

Through defendant Englewood Cliffs Department of Public Works (DPW), the municipality maintains a total of thirty-seven road miles, including the two roads that formed the intersection in which plaintiff fell. Mark Neville, the superintendent of the DPW, testified that, in 2014, he had limited staff to maintain the roads given the workload of the department. Specifically, he had eleven workers. He testified he was unaware of any loose gravel or potholes in the intersection before plaintiff's fall.

Neville described how the municipality repairs a pothole. Any loose debris in and around the pothole is removed, and the pothole is prepared with tar tack to enable asphalt to bond to the material that exists at the base and on the sides of the pothole. If a pothole is repaired during the summer, the DPW applies hot asphalt and "I-5 mix." If the weather is cold, the DPW uses a "cold patch mix." Neville claimed the gravel discovered in the intersection was not made of a material the municipality used for any purpose, and opined the gravel may have fallen from a truck that had been improperly covered.

In support of her claims, plaintiff served defendants with reports and affidavits drafted by her proposed expert engineer, Richard M. Balgowan, P.E. In his opinion, the photographs of the subject intersection showed "deteriorating conditions of the roadway" and "temporary/improper repairs." He stated the

3

gradation and color of the loose gravel indicated the gravel came from a breakdown of asphalt pavement, which subsequently migrated to the middle of the intersection.

In addition, Balgowan claimed the photographs and his visit to the site revealed numerous areas of the road that had been patched with hot mix asphalt or cold patch asphalt. He maintained that cold patch asphalt, an old technology, breaks down quickly and that a roadway patched with such material must be repeatedly repaired. Balgowan concluded that

> [t]he repair methods used by Englewood Cliffs would predictably result in the repair eventually failing and would predictably cause aggregate to dislodge onto the adjacent pavement. The pothole patching method, utilized by Borough of Englewood Cliffs Department of Public Works, was a temporary repair and required frequent monitoring to determine when it needed to be redone.

Balgowan also opined the roadway repair process DPW utilized resulted in a dangerous condition at the subject intersection at the time of plaintiff's fall, and that it was "palpably unreasonable for defendants to do nothing and allow the dangerous condition to persist at the peril of the anticipated users of the roadway."

The trial court granted defendants' motion for summary judgment, finding "the record does not show that the injury was proximately caused by the

dangerous condition that instead. [sic] The evidence showed that the injuries were caused by plaintiff's own lack of attention . . . ." Additionally, the court concluded there was no merit to plaintiff's allegations defendants' actions or omissions with respect to maintaining the subject area of the road were palpably unreasonable.

The trial court denied plaintiff's motion for reconsideration because plaintiff failed to identify any evidence or law it overlooked when it granted defendants' motion for summary judgment, or to provide a basis for the court to find its decision was palpably incorrect or irrational. This appeal ensued.

II

On appeal, plaintiff asserts the following arguments for our consideration.

> POINT I: THE ORDERS GRANTING SUMMARY JUDGMENT AND DENYING RECONSIDERATION MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTED GENUINE ISSUES OF MATERIAL FACT THAT WERE DECIDED BY THE TRIAL JUDGE INSTEAD OF A JURY.

> POINT II: THE GRANT OF SUMMARY JUDGMENT AND THE REFUSAL TO RECONSIDER MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTED GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER DEFENDANTS' ACTIONS WERE PALPABLY UNREASONABLE.

A-0289-17T3

We "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We must "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid.; see also Brill, 142 N.J. at 540 (1995); R. 4:46-2(c). However, a trial court's determination that a party is entitled to summary judgment as a matter of law is "not entitled to any special deference," and is subject to de novo review. See Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

When evaluating the motion record, we view the facts in the light most favorable to the non-moving party, "keeping in mind '[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion . . . would require submission of the issue to the trier of fact.'" Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 366 (App. Div. 2015) (alteration in original) (quoting R. 4:46-2(c)). A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011), or disputed facts "of an insubstantial nature." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2019). "Competent opposition requires

'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005).

"Reconsideration [of an order] is a matter to be exercised in the trial court's sound discretion." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). "Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Public entity liability is restricted under the TCA. Polzo v. Cty. of Essex, 209 N.J. 51, 55 (2012) (Polzo II). Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability."

Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002) (citing Collins v. Union Cty. Jail, 150 N.J. 407, 413 (1997)); see N.J.S.A. 59:1-2 and 59:2-1. Accordingly, "immunity for public entities is the general rule and liability is the exception." Kemp v. State, 147 N.J. 294, 299-300 (1997).

N.J.S.A. 59:4-2 "creates public liability for dangerous conditions on public property." Manna v. State, 129 N.J. 341, 347 (1992). The TCA defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). A public entity is liable for a dangerous condition on its property

> if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> > a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
> >
> > b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

8

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

Thus, for liability to attach, a plaintiff must establish the following five elements: (1) a "dangerous condition" existed on the property at the time of the injury; (2) the dangerous condition proximately caused the injury; (3) the dangerous condition "created a reasonably foreseeable risk of the kind of injury which was incurred" either because (a) the dangerous condition was caused by a negligent employee or, alternatively, (b) the public entity knew or should have known about the condition; and (4) the entity's conduct was "palpably unreasonable." Vincitore v. N.J. Sports & Expo. Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).

Thus, even if a plaintiff proves the first four elements, "the public entity still will not be liable unless the public entity's failure to protect against the dangerous condition can be deemed 'palpably unreasonable.'" Polzo II, 209 N.J. at 66 (quoting N.J.S.A. 59:4-2). "Plaintiff bears the burden of proving that [the public entity] acted in a palpably unreasonable manner." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003).

A-0289-17T3

Here, it is undisputed there was gravel in the middle of the intersection and that it caused plaintiff to skid and fall. Because plaintiff is the non-moving party, we accept as true her contentions the gravel on which she skidded was caused by defendants' use of materials on the road that easily crumbled, which caused the loose gravel to form, and that defendants failed to promptly remove such gravel. However, after examining the record and applicable legal principles, we agree with the trial court that defendants' conduct was not palpably unreasonable.

The term palpably unreasonable "implies behavior that is patently unacceptable under any given circumstance." Id. at 195 (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). "[F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Id. at 195-96 (quoting Kolitch, 100 N.J. at 493). "Although ordinarily the question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury, in appropriate circumstances, the issue is ripe for a court to decide on summary judgment." Polzo II, 209 N.J. at 75 n.12.

Here, it is not manifest and obvious that no prudent person would approve of the conduct plaintiff alleges as the basis for defendants' liability. In reaching

10

this conclusion, we are guided by our Supreme Court's decision in Polzo II. There, the Court observed that, notwithstanding that roadways are used by bicyclists, roadways "generally are built and maintained for cars, trucks and motorcycles," not bicyclists. Id. at 71. The Court stated:

> The "roadway" is "that portion of a highway . . . ordinarily used for vehicular travel . . . ." A "vehicle" is defined as "every device in, upon or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks or motorized bicycles." By the Motor Vehicle Code's plain terms, roadways generally are built and maintained for cars, trucks, and motorcycles – not bicycles.
>
> [Id. at 70-71 (citations omitted) (quoting N.J.S.A. 39:1-1).]

Recognizing that bicyclists face inherent dangers on roadways, such as potholes, which do not present hazards to the drivers of and the passengers in motor vehicles – the general, intended users of roadways – the Court found "[p]ublic entities do not have the ability or resources to remove all dangers peculiar to bicycles. Roadways cannot possibly be made or maintained completely risk-free for bicyclists." Id. at 71. Further, "not every defect in a highway, even if caused by negligent maintenance, is actionable." Id. at 64

11

(quoting Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979)).

Even if, as plaintiff here contends, the trial court erred when it found plaintiff's actions were the proximate cause of her injuries, she did not meet "the heavy burden of establishing that defendants' conduct was palpably unreasonable." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 106 (1996). It was not palpably unreasonable for defendants to fail to remove the gravel at issue here, material "a car would harmlessly pass over," Polzo II, 209 N.J. at 71, given that municipalities do not have a duty to make roadways risk-free for bicyclists. Id. at 77. "[A] public entity – in choosing when and what repairs are necessary – might reasonably give lesser priority to" correcting conditions harmless to vehicles. Ibid.

In light of our ruling, we need not reach the issue of whether plaintiff's actions were the proximate cause of her injuries.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0289-17T3