**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1412-20

CITY OF ATLANTIC CITY,

     Plaintiff-Respondent,

v.

SPECIAL SITUATIONS
VALUE INVESTING, LLC,

     Defendant-Appellant,

and

BLUE VISTAS, LLC, RINGS
INVESTMENTS, LLC,

     Defendants,

v.

RICHARD DONATO AND
ATLAS 21ST CENTURY, LLC,

     Third-party Defendants.

_____

Submitted December 8, 2021 – Decided February 2, 2022

Before Judges Hoffman, Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000017-19.

Law Firm of George K. Miller, Jr., attorneys for appellant (George K. Miller and Kristina A. Miller, on the briefs).

Stradley Ronon Stevens & Young, LLP, attorneys for respondent (Robert J. Norcia, of counsel and on the brief).

PER CURIAM

Plaintiff, the City of Atlantic City (the City), sued defendant Special Situations Value Investing (SSVI), an Arizona limited liability company, for allegedly holding counterfeit deeds to eight properties in Atlantic City. The court granted the City's motion for summary judgment, and we reverse.

In November and December 2018, SSVI recorded deeds at the Atlantic County Clerk's office to transfer the subject properties. These deeds purportedly transferred the subject properties: 1514 Belfield Avenue, 811-813 Baltic Avenue, 517 Drexel Avenue, 620 Drexel Avenue, 346 N. So. Carolina Avenue, 350 N. So. Carolina Avenue, 305 N. Indiana Avenue, and 330 N. Indiana Avenue, from the City to SSVI.

The City had acquired the properties following purchases of tax sale certificates and subsequent in-rem tax foreclosure actions. The City asserts

that SSVI fraudulently recorded counterfeit deeds in November and December 2018, that the City did not discover until Spring 2019. These deeds appeared to memorialize the City's transfer of the properties to SSVI for $1.00 each pursuant to the powers granted to the City of Atlantic City Under the Abandoned Properties Rehabilitation Act (APRA), N.J.S.A. 55:19-78 to -107 (2006).

The City asserts the subject properties were not transferred in accordance with New Jersey's Local Lands and Building Law (LLBL), N.J.S.A. 40A:12-1 to -30 (2020), because it never passed a resolution authorizing the transfer of the subject properties to SSVI and SSVI did not purchase them at a public auction.

The City filed a complaint to quiet title on May 24, 2019, and an amended complaint on June 7, 2019. On August 8, 2019, SSVI answered the complaint, and filed a counterclaim and third-party complaint, alleging, in part, that the City conspired with third-party defendants, Atlas 21st Century and its owner, Richard Donato (collectively, TPDs) regarding the alleged forged deeds. It asserted that the City had an agreement with Atlas and Donato regarding the series of fraudulent transfers to obtain funds from SSVI

3

and assisted them with such actions, but that SSVI was a bona fide purchaser for value in all the transactions.

In Spring 2020, SSVI subpoenaed third-party defendants for deposition with requested records. Neither deposition occurred. At a case management conference on May 4, 2020, the court requested discovery updates, and both parties advised they wanted to conduct additional depositions, especially of Donato. The court allowed SSVI sixty days, until July 5, to respond to the City's discovery requests, but lamented it may have to push the date back again because of the pandemic travel restriction. The court hoped to meet again in mid-July for another case management conference, finish depositions by August 31, and have an in-person trial in September 2020.

The City filed its motion for summary judgment on September 30, 2020, to quiet title and dismiss SSVI's counterclaims with prejudice. SSVI asserted that it had not received documents or deposed TPDs before the City's motion for summary judgment, making discovery incomplete. The City's Statement of Material Facts represented that the deeds transferring each property for $1[1] were not actually prepared or signed by the city employees named on the deeds and that an April 2017 letter to Donato from Regina Armstrong, the then City

---

[1] Neither party has argued that the consideration of $1.00 is either indicative of fraud or makes such transfers invalid without fraud.

A-1412-20

Assistant Planning Director was also a forgery. The City included five affidavits, in rem foreclosure complaints for tax sale certificates, the final judgment in foreclosure, a subsequent amended complaint for in rem foreclosures for tax sale certificates, that final judgment in foreclosure, the alleged forged deeds, and the Armstrong letter with its email correspondence.

In these affidavits, the then Deputy City Solicitor, the city clerk, and the keyboarding clerk who is a notary public, each disclaimed that they prepared, executed, notarized, or were otherwise involved in the purported transfers. The solicitor added that he could never make such transfers without authorizations from City Council; the city clerk added that she could never transfer or execute deeds in her position and cannot sign as witness without authorization, and would have corrected the repeated incorrect spelling of her last name if she was signing these documents; the notary public added that he does "not know how someone could have obtained [his] Notary stamp," and that he did not administer the oath to the former mayor or witness his execution of the documents.

In her affidavit, Armstrong, reiterated that an April 21, 2017 letter from her to Donato, which SSVI produced during discovery, was also a forgery. Armstrong certified she "did not draft, dictate, or otherwise cause or authorize

this letter to be sent to Mr. Donato," the signature was "clearly lifted from another letter authored by" her, and she never handled the APRA funds or bids, which the letter references. The City's Director of Licensing and Inspections certified in his affidavit that he is the public officer for administering the City's APRA program, so he is familiar with the City's list of abandoned properties, and that the subject properties were never on the list. He included a copy of the list, but it is undated.

In opposition, SSVI submitted a counter statement of material facts, neither admitting nor denying that the deeds were fraudulent because it asserted that discovery was not complete. SSVI asserted that former Atlantic City Mayor, Frank Gilliam, who was the mayor at all relevant times, "pled guilty to federal corruption charges for stealing money from a non-profit youth basketball program. . . . [and was] awaiting sentencing," and that SSVI contacted his attorney but had not received a response. In his affidavit, SSVI's principal partner, Michael Onghai, certified that he believed Donato and others were working with the City, that then-mayor Gilliam signed the notarized deeds, that he received a copy of the Armstrong letter, and that SSVI spent approximately $500,000 to purchase real property in the City.

A-1412-20

SSVI filed an additional affidavit from a Robert Salvato, who asserted he attempted to help SSVI purchase property to rehabilitate and that he witnessed his officemate, Donato, conduct business as Atlas with the City. Salvato asserted he witnessed Donato giving cash to a female city employee outside City Hall and that Donato told him he gave cash to other city employees, including one affiant, and that an affiant gave Donato lists of properties to transfer and rehabilitate.

The parties appeared virtually for oral argument on the summary judgment motion on December 4, 2020, and the trial court issued an order on December 7, 2020, granting the City's motion for summary judgment to quiet title and dismiss SSVI's counterclaims with prejudice. In its accompanying memorandum, the court outlined both sides' arguments, noting specifically that SSVI asserted the case rested on a fact-finder's determination of the affiants' credibility, and a dispute of fact as to whether Mayor Gilliam signed the documents. The court framed the City's arguments favorably as "the sworn testimony of the City employees, coupled with the complete lack of any documentary evidence or suggestion to the contrary, is sufficient for this [c]ourt to grant [the City's] [m]otion for [s]ummary [j]udgment and quiet title to the [subject properties]," and even if the court did not accept the affidavits

as credible, that summary judgment would still be proper because the subject properties "were not transferred in accordance with the LLBL."

The court explained the summary judgment standard, noting that "credibility only becomes an issue when the testimony in question contains 'inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth.'" (quoting D'Amato v. D'Amato, 205 N.J. Super. 109, 115 (App. Div. 1997)). The court held that, "the testimony of the several City employees do not contain improbabilities or contradictions which raise the [c]ourt's suspicion as to [their] truth" because forgery in deeds is "not so uncommon as to raise the [c]ourt's suspicion that the affiants here are not telling the truth." The court found the City's affidavits credible and sufficient to support granting summary judgment. The court added that the noncompliance with property laws like the LLBL, supported the City's credibility, while SSVI's affidavit was vague and lacked credibility.

In support of these holdings, the court discussed how the affidavits supported that the deeds were forgeries as a matter of law because "[a]ll evidence leads a rational factfinder to conclude that the deeds . . . were indeed forged," since three City affidavits compared with no credible SSVI evidence,

8

makes the issue "so one-sided" that the City must win. The court further noted that SSVI was not eligible to purchase the subject properties because the City did not pass a resolution, so SSVI did not purchase in compliance with law and the deeds are null and void.

The court handled the motion to dismiss akin to a motion for summary judgment, and dismissed the counterclaims with prejudice because "the only evidence of this alleged involvement by the City was the letter purportedly from . . . Armstrong . . . ." The Armstrong letter congratulated Donato, stating Atlas was "approved to participate in the New Jersey Abandoned Property Rehabilitation Act," and that Donato's "non-refundable submitted bid of $240,000 [had] been applied to the purchase price of the properties [and] the deeds [would] be issued once certificates of occupancy [were] achieved."

The court had found the City's affidavits credible "in that they raise no suspicion of falsity." The court compared Armstrong's affidavit and the Armstrong letter.

> Ms. Armstrong denies having ever executed or sending the letter. Additionally, as Ms. Armstrong states in her [a]ffidavit and contrary to the substance of the letter, Ms. Armstrong was not responsible for handling the City's abandoned properties pursuant to the "New Jersey Abandoned Property Rehabilitation Act," and was never responsible for handling funds or "bids."

Thus, the court found no dispute as to the material facts and no evidence which would indicate that the City had any involvement in the scheme to defraud, and as such the counterclaims against the City should be disposed of with prejudice.

The court requested a draft order to transfer the subject properties back to the City, which the City promptly provided. On January 8, 2021, the trial court entered a final judgment and decree quieting the City's title to the subject properties and dismissing SSVI's counterclaims with prejudice.[2] This appeal followed.

SSVI asserts that summary judgment was improper because the court ignored SSVI's defenses, used an incomplete record from incomplete discovery, and ignored disputed facts. SSVI asks the panel to reverse the summary judgment orders.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l

---

[2] At oral arguments on December 4, 2020, the court had planned a conference to address the third-party complaint. Then, on December 14, 2020, the court ordered to transfer all remaining claims to the Law Division. On May 26, 2021, a judge in the Law Division entered an entry of final judgment by default against TPDs, Donato and Atlas "for the sum of $502,550. plus $83,780.72 in attorney's fees and costs, totaling $586,330.72." Those orders are not before us.

Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We do not defer to a trial court's assessment of the documentary record, as the decision to grant or withhold summary judgment does not hinge upon a judge's determinations of the credibility of testimony rendered in court; rather, it determines a question of law. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). An issue does not create a genuine dispute "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact . . . ." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Thus, summary judgment is appropriate when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid.

A party cannot overcome the motion with "conclusory and self-serving assertions," it needs competent evidential material, such as records, reports,

affidavits, and depositions.  See Puder v. Buechel, 183 N.J. 428, 440-41 (2005).  Because the court needs to consider whether there is sufficient support, a court should also deny summary judgment as premature where discovery is incomplete.  See Velantzas v. Colgate-Palmolive Co., Inc., 109 N.J. 189, 193-94 (1988).  If reviewing the evidence to determine whether material facts are in dispute includes a credibility evaluation of evidence, a court should deny summary judgment.  See Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011) (citing Parks v. Rogers, 176 N.J. 491, 502 (2003)).

Based on our review of the record we are constrained to reverse the entry of summary judgment because the court improperly considered credibility in its determination.  "In reviewing whether or not a genuine issue as to any material fact challenged is presented, the motion judge cannot weigh the credibility of the evidence."  Petersen, 418 N.J. Super. at 132 (citing Parks, 176 N.J. at 502).  The court explicitly applied a credibility analysis here when it found the City's affidavits credible "in that they raise no suspicion of falsity."  The court compared Armstong's affidavit and the Armstrong letter.

> Ms. Armstrong denies having ever executed or sending the letter.  Additionally, as Ms. Armstrong states in her [a]ffidavit and contrary to the substance of the letter, Ms. Armstrong was not responsible for

handling the City's abandoned properties pursuant to the "New Jersey Abandoned Property Rehabilitation Act," and was never responsible for handling funds or "bids."

The court noted that the noncompliance with property laws like the LLBL, supported the City's credibility, while SSVI's affidavit was vague and lacked credibility.

The court incorrectly applied the concept that "credibility only becomes an issue when the testimony in question contains 'inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth,'" (quoting D'Amato, 205 N.J. Super. at 114), when it held that, "the testimony of the several City employees do not contain improbabilities or contradictions which raise the [c]ourt's suspicion as to [their] truth" because forgery in deeds is "not so uncommon as to raise the [c]ourt's suspicion that the affiants here are not telling the truth."

The court overlooks that the deeds might have been forged by someone other than the affiants. At oral arguments, SSVI summarized the dispute well.

> Really what those four affidavits say is I didn't do it, not that the City didn't do it, and you would think the Clerk would have some familiarity with -- with the Mayor's signature, and the same thing with [city employee Edward] Lax because he notarized it I would assume on numerous other occasions. No one said we don't believe it's the Mayor's signature.

13

. . . .

    [W]e say someone in the City's involved, there's been no explanation how Lax's seal got on the documents or Regina's letter and her signature got on the document. There's been no dispute that they're accurate signatures, accurate stationery, or -- or that this seal is accurate.

    Further . . . the City put this on the tax rolls in -- in [SSVI's] name and sent out a tax bill. So, it's ignored that they thought everything, at one point, they thought everything was valid. So, you know, it's been unclear how this got recorded and whether or not someone else in the City is responsible for this.

We agree. Determining credibility, where credibility is at issue, is enough to deem summary judgment improper. But the court here additionally applied the incorrect analysis against SSVI. The court must view the competent evidence "in the light most favorable to the non-moving party," to determine whether such materials "are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill</u>, 142 N.J. at 540. The court applied the opposite analysis here. In support of its holdings, the court found that the affidavits supported a showing that the deeds were forged as a matter of law because "[a]ll evidence leads a rational factfinder to conclude that the deeds . . . were indeed forged."

Thus, the court framed the analysis as to whether the moving party, the City, could show the deeds were forged; but the court should have focused on whether the non-moving party, SSVI, could permit a rational factfinder to find that the City was involved in the deeds being forged. In doing this, SSVI would have to convince a factfinder that the deeds signed and notarized by City employees, the Armstrong letter, and its witnesses are more credible than the City's witnesses.

SSVI also raises the meritorious argument that because discovery was incomplete, summary judgment was premature. Parties must complete discovery before a court can grant summary judgment. See Velantzas, 109 N.J. at 193-95. Similarly, in D'Alia v. Allied-Signal Corp., the court reversed summary judgment because "the legal issues were not ripe for resolution since discovery had not been completed" and "[i]t [was] inappropriate to grant summary judgment where the suit [was] in the early stage and the evidence ha[d] not been fully developed." 260 N.J. Super. 1, 12 (App. Div. 1992).

Discovery must come to an end, so parties cannot endlessly argue that discovery is incomplete to avoid summary judgment. To defeat the City's motion for summary judgment as premature for incomplete discovery, SSVI must "demonstrate with some degree of particularity the likelihood that further

discovery will supply the missing elements of the cause of action," Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)), and "specify what further discovery is required," Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007). SSVI did that here by asserting that it had not received documents or deposed TPDs before the City's motion for summary judgment. Moreover, the court had previously acknowledged discovery may need to continue to complete depositions before trial. Because we are remanding the matter, we leave the management of any remaining discovery to the discretion of the trial judge.

Finally, we reject the City's alternative argument that the deeds are void regardless because they did not occur in compliance with the LLBL. The court accepted noncompliance as an alternative argument to show that SSVI did not have valid title and that SSVI was not eligible to purchase the subject properties because the City did not pass a resolution, so SSVI did not purchase in compliance with law, so the deeds are null and void in favor of the City. SSVI concedes the deeds were not transferred pursuant to the cited laws but argues on this record that is not dispositive. We agree, because the question is

16

entangled with the improper credibility analyses on the alleged fraud, so it cannot support a finding to quiet title to the City.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1412-20