**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3663-22

NMR & ASSOCIATES,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

HOPE CHAPEL ASSOCIATES,

    Defendant-Appellant/
    Cross-Respondent.

_____

        Submitted October 9, 2024 – Decided October 30, 2024

        Before Judges Rose and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000038-22.

        Levin Shea Pfeffer & Goldman, PA, attorneys for appellant/cross-respondent (Adam D. Pfeffer and Matthew Borriello, of counsel and on the briefs).

        Law Offices of Jonathan Fleisher, attorneys for respondent/cross-appellant (Jonathan Fleisher, of counsel and on the brief).

PER CURIAM

This appeal requires our consideration of a commercial lease provision that granted the tenant, plaintiff NMR & Associates, an option to purchase the property for a one-year period, with "at least two . . . months['] advance notice of exercise of the option." Plaintiff attempted to exercise the option. Asserting plaintiff failed to comply with the terms of the option provision, defendant Hope Chapel Associates refused to sell the property. Plaintiff filed a complaint for anticipatory breach of contract and breach of the covenant of good faith and fair dealing, seeking specific performance of the parties' agreement, monetary damages, and other relief. On cross-motions for summary judgment, the chancery court accepted plaintiff's interpretation of the option clause.

Defendant now appeals from a June 23, 2023 order granting plaintiff's request for specific performance. Plaintiff cross-appeals from a provision of the same order striking its damages claim. Because the court's interpretation was consistent with the plain meaning of the agreement and effectuated the parties' intention, we affirm on the appeal. The court having failed to articulate its reasons for denying plaintiff's damages claim, we reverse and remand on the cross-appeal.

A-3663-22

I.

We summarize the facts and procedural history from the record provided on appeal. As the motion court correctly observed, the facts regarding the formation of the lease agreement were undisputed and the parties' cross-motions for summary judgment turned on the proper meaning of the option provision.

On December 28, 2020, the parties executed a lease agreement for commercial property located on South Hope Chapel Road in Jackson (Premises). At issue is the following provision of the lease agreement:

> OPTION TO PURCHASE THE PREMISES AND ADDITIONAL PROPERTY. ~~At any time during the term of the lease~~, Tenant shall have the right to exercise an option to purchase the Premises and additional [p]roperty owned by the Landlord as set forth in and upon the terms and conditions set forth in the Purchase and Sale Agreement . . . (PSA) attached hereto and made a part hereof as Exhibit C. Tenant shall have given Landlord at least two (2) months advance notice of exercise of the option, time being of the essence for such notice.

The struck language appeared in the initial draft of the lease agreement and was replaced with a handwritten notation in the margin stating, "for a period

of one year from the execution of the lease agreement."[1] Representatives of both parties initialed the amended terms.

A subsequent provision of the lease agreement governed notice:

> All notices required under the terms of this Lease shall be given and shall be complete by mailing such notices by certified or registered mail, return receipt requested, or by nationally recognized overnight delivery service . . . . Any notice may be given by a party hereto or by a party's attorney. Notices shall be effective upon receipt or refusal.

Under the terms of the incorporated PSA, a $25,000 deposit was payable "within ten (10) days after signing of [the] contract" and would "be held in Riverside Abstract['s] non[-]interest bearing trust account until closing." The PSA also stated, in relevant part: "The closing date to be on or about thirty (30) days after the execution and delivery of this contract."

On November 4, 2021, within the first year of the leasehold, plaintiff sent an email to defendant indicating its intention to purchase the Premises. Defendant did not respond.

The following month, on December 2, 2021, plaintiff's attorney sent defendant a letter via mail, providing notice of its intent to exercise the purchase

_____

[1] The handwritten language on the copy of the agreement provided on appeal is difficult to discern. We glean the terms from the court's oral decision and the parties' submissions.

A-3663-22

option. Defendant received the letter on December 6, 2021, but did not respond.

On February 22, 2022, plaintiff's counsel sent defendant a time of the essence letter, scheduling a March 9, 2022 closing date under the thirty-day notice provision of the parties' PSA. The letter further stated defendant's failure to appear at the closing would be deemed a breach of the parties' contract.

On February 27, 2022, defense counsel responded by email and express mail, asserting plaintiff failed to properly exercise the purchase option. Citing the one-year option provision of their lease agreement, defense counsel asserted:

> The option was to be executed no later than October 28, 2021. On November 4, 2021[,] your client sent a deficient email (as the [n]otice was sent outside of the contracted time period, and was not sent in accordance with the terms and conditions of the fully executed [l]ease [a]greement) purporting to exercise the option.

Accordingly, defendant rejected plaintiff's attempt to exercise its option under the lease agreement.

Before the motion court, plaintiff argued it timely exercised its option within the first year of the parties' lease agreement and any ambiguity in the notice provision must be construed against defendant as its drafter. Defendant countered it was not obligated to comply with the sale because plaintiff failed to exercise the purchase option at least two months before the first year of the

5

lease term ended. Defendant further argued plaintiff failed to provide the necessary deposit pursuant to the terms of the agreement.

Immediately following argument on June 23, 2023, the motion court issued an oral decision ordering specific performance of the purchase option. The court found plaintiff's December 2021 notice of intent to exercise the option complied with the terms of the lease agreement. Noting the excised provision, "at any time during the term of the lease," was replaced with "for a period of one year from the execution of the lease agreement," the court found plaintiff's argument more persuasive. The court elaborated:

> The crucial point here is that the initial lease was for a period of two years. Obviously, the landlord wanted to restrict the option to the first year. The tenant apparently agreed to this change during negotiations, and the phrase . . . permitting the exercise of the option "[a]t any time during the [term of the] lease" . . . was struck.
>
> In its place it was written, "for a period of one year from the execution of the lease agreement" with the following words "to exercise."
>
> Clearly, the plain meaning of the contractual provision as amended [is] that they had a one-year period from the date of the execution to exercise the option.
>
> [D]efendant's argument that the two-month notice provision actually shortened the period to ten months is a strained interpretation in the court's view

6

that would render the precise language of the contract meaningless.

Rather, it makes much more sense that the tenant had the one year to exercise the option and then give the landlord notice of two months to then get ready for closing and do what's necessary. I think that's the more reasonable interpretation that is in line with the plain reading of the contractual language.

The court therefore granted plaintiff's summary judgment motion, ordering the parties to "fully cooperate to complete the sale and purchase of the property as set forth in the [PSA]." However, the court did not address plaintiff's damages claim.

On appeal, defendant maintains plaintiff failed to properly exercise the option to purchase and, even if plaintiff provided timely notice, it did not comply with the PSA's deposit provision. In its cross-appeal, plaintiff argues it sustained monetary damages, including rent payments to defendant, loss of profits from potential tenants, and increased interest rates.

II.

We review de novo the trial court's summary judgment decision, employing the same Brill[2] standard that governed the trial court. See Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024).

---

[2] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"The interpretation or construction of a contract is generally a legal question, which is 'suitable for a decision on a motion for summary judgment.'" JPC Merger Sub LLC v. Tricon Enters., 474 N.J. Super. 145, 159-60 (App. Div. 2022) (quoting Peterson v. Twp. of Raritan, 418 N.J. Super. 125, 133 (App. Div. 2011)); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 4:46-2 (2025). Reviewing courts therefore "pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

An option to purchase is a "binding unilateral contract." State v. New Jersey Zinc Co., 40 N.J. 560, 576 (1963). "[G]eneral principles governing judicial interpretation of a contract" instruct that a "court's goal is to ascertain the 'intention of the parties to the contract.'" Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000) (quoting Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556, 570 (1999)), aff'd, 169 N.J. 135 (2001). To do so, the court must "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006)).

A-3663-22

Generally, courts give contractual terms their plain and ordinary meaning. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). When those terms are "'clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "An ambiguity in a contract exists if [its] terms . . . are susceptible to at least two reasonable alternative interpretations." Schor, 357 N.J. at 191 (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F.Supp. 275, 283 (D.N.J. 1992)).

After de novo review of defendant's reprised contentions in light of these governing legal principles, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief remarks.

As the motion court recognized, to accept defendant's interpretation of the notice provision "would render the precise language of the contract meaningless." Similarly, we reject defendant's strained reading of the PSA's deposit provision. Defendant argues the PSA, which also was executed on December 28, 2020, obligated plaintiff "to make the required deposit no later than January 7, 2021." Because plaintiff failed to tender a deposit within that

ten-day period – and never demonstrated it ever made a deposit – defendant claims plaintiff failed to comply with the purchase option agreement, which incorporated the PSA.

However, defendant never made any demand for the deposit, refusing instead to sell the Premises. Moreover, the court ordered the parties to complete the real estate transaction pursuant to the terms "set forth in the [PSA]." In our view, that provision of the order triggers the time frame set forth in the PSA. Otherwise, the deposit would have been due nearly one year before maturation of plaintiff's right to exercise its option. Accepting defendant's interpretation of the deposit provision would lead to an absurd result. See Barila, 241 N.J. at 616. We therefore affirm the order granting plaintiff's summary judgment motion substantially for the reasons stated by the motion court.

We turn briefly to plaintiff's cross-appeal. In the June 23, 2023 order granting specific performance, the court struck the proposed provision awarding damages and seeking a proof hearing. In its oral decision that same day, however, the court did not set forth its factual and legal findings underpinning its decision. See R. 1:7-4(a) (requiring the court "find the facts and state its conclusions of law . . . on every motion decided by a written order that is

appealable as of right"). Notably, the parties did not address plaintiff's damages claim during oral argument.

Notwithstanding our de novo standard of review, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018). We therefore vacate the court's denial of damages and remand this matter for further proceedings. In doing so, we do not suggest a preferred result. We leave to the court's sound discretion whether to reopen oral argument on plaintiff's damages claim.

Affirmed in part, reversed and remanded in part. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3663-22